[No. 26231-9-I. Division One. February 10, 1992.]

JANE DOE, *Appellant*, v. THE BOEING COMPANY, *Respondent*.

236

*American Civil Liberties Union Foundation of Washington; Lonnie G. Davis, Disabilities Law Project;* and *Kelby D. Fletcher* (of *Peterson, Bracelin, Young, Putra, Fletcher & Zeder, Inc., P.S.,*) for appellant.

*Valerie L. Hughes, Rex D. Berry,* and *Perkins Coie,* for respondent.

AGID, J. — Jane Doe appeals the dismissal of her complaint for employment discrimination on the basis of handicap, contending that the trial court erred in concluding that The Boeing Company's (Boeing) accommodation of her condition was reasonable. Respondent Boeing cross-appeals the trial court's characterization of gender dysphoria[1] as a

---

[1]Gender dysphoria is an incongruity between one's anatomical sex and one's perception of oneself as male or female, also known as transsexualism. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 74 (3d ed. rev. 1987).

handicap under RCW 49.60. We reverse the trial court's dismissal of Doe's complaint and enter judgment for Doe on the issue of liability.

Jane Doe, born a biological male, was hired by Boeing as an associate engineer in 1978. At the time she was hired, Doe presented herself as a male. After attending support groups and counseling sessions for about 2 years, Doe was diagnosed as gender dysphoric in 1984. Thereafter, Doe informed her family and friends of her condition, changed her name to that of a woman both legally and on Boeing records, and began hormone and electrolysis treatments. Doe made numerous efforts to inform and educate her coworkers and Boeing management about her condition and consequent needs, providing Boeing with letters from her physician, psychologist, and Dr. Biber, her surgeon. In March 1985, Doe informed Boeing that she ultimately planned to have sex reassignment surgery.

Established standards for the treatment of transsexuals contemplating gender reassignment surgery (the Harry Benjamin International Gender Dysphoria Standards (Benjamin Standards)) require that surgery be preceded by a period of at least 12 months during which the patient lives full time in the social role of the opposite sex. Doe felt ready to begin the preoperative stage of her transition from male to female in June 1985. In conjunction with this step, on June 2, 1985, Doe informed Boeing that she intended to begin wearing more feminine clothing. While Doe received no specific instructions with respect to dress from her physician or psychologist, she discussed such matters generally with Dr. Biber. Doe felt that this step was necessary to avoid dishonesty in the manner in which she presented herself to the world. Under the Benjamin Standards, outward assumption of a female identity is necessary to avoid further role confusion and psychological damage after the surgery has been performed.

As of 1985, Boeing had no written policy with respect to accommodation of transsexual employees. While Boeing officials testified that Boeing had an unwritten policy that

employees were to present themselves according to their anatomical gender at the most recent date of hire, all employees were in fact permitted to wear unisex clothing. Boeing management thus informed Doe that she was not permitted to wear dresses, skirts, or frilly blouses; however, no other clothing was specifically identified as prohibited under company policy.

At no time did Doe ever wear a dress, skirt, or frilly blouse. Doe's immediate work group was supportive of her transition, and there were no complaints about Doe's attire. On October 15, 1985, however, after a complaint was made with respect to Doe's use of a women's rest room,[2] Boeing issued a corrective action memo informing Doe that she was not permitted to use the women's rest rooms or to dress as a female, and that to do so might result in her dismissal or in other disciplinary measures. Boeing management established a test to determine whether the clothing she wore was excessively feminine; i.e., she was not permitted to wear any clothing that would cause a complaint if she wore it into the men's rest room. To determine whether Doe was in compliance with this standard, her immediate supervisor went to her desk each day to determine whether her "total appearance" was acceptable and made notes about what she was wearing. On November 5, 1985, Doe's supervisor determined that Doe's attire was unacceptable. Specifically, he objected to a pink pearl necklace. Doe's attire on that day otherwise passed the test. Doe was terminated for dressing in feminine attire on that date.[3]

---

[2]Doe used a women's rest room on approximately a dozen occasions in conjunction with her assumption of a female identity. After receiving the memo, she limited her use of rest rooms to offsite women's rest rooms at lunchtime. This issue does not, however, factor into our analysis here since neither party contends that this was a basis for her discharge.

[3]This was the only reason given for Doe's termination in Boeing records. One "customer" of Doe's group, another Boeing employee, complained about her on one occasion. However, Boeing officials testified at trial that Doe caused no disruption in the workplace and that there was no measurable decline in either the work group's performance or in Doe's own job performance.

A stipulated order bifurcating the issues of liability and damages was entered at trial. This appeal arises from the trial court's decision on liability. The trial court held that Doe was temporarily handicapped within the meaning of WAC 162-22-040 and that "[t]he conflict occasioned in the workplace by plaintiff's preparation for sex reassignment surgery" raised the need for an accommodation by Boeing. The court declined, however, to hold that gender dysphoria is always a handicap under Washington law. It concluded that Boeing offered an accommodation and that the accommodation was reasonable. It therefore dismissed Doe's complaint with prejudice in its entirety.

I

## Gender Dysphoria as a Handicap

We first address the question of whether the trial court erred in characterizing gender dysphoria as a handicap within the purview of RCW 49.60. The material facts in this case are essentially undisputed. The parties disagree on the legal effect of those facts. The manner in which a statute applies to a given set of facts is a question of law that we review de novo. *Lobdell v. Sugar 'N Spice, Inc.*, 33 Wn. App. 881, 887, 658 P.2d 1267, *review denied*, 99 Wn.2d 1016 (1983); *State v. Anderson*, 51 Wn. App. 775, 778, 755 P.2d 191 (1988) (an appellate court may differ from the trial court with respect to the legal effect to be derived from undisputed facts).

The Washington Law Against Discrimination (RCW 49.60) provides:

It is an unfair practice for any employer:

. . . .

(2) To discharge or bar any person from employment because of . . . the presence of any sensory, mental, or physical handicap.

RCW 49.60.180(2). While the statute does not define "handicap", it delegates authority to adopt and promulgate rules and regulations to carry out its provisions to the Washington State Human Rights Commission (the Commission). RCW 49.60.120(3). Pursuant to that delegation of authority, the

Commission adopted the following definition of "handicap" for purposes of determining whether an unfair practice has occurred:

(a) A condition is a "sensory, mental, or physical handicap" if it is an abnormality and is a reason why the person having the condition did not get or keep the job in question . . .. [A] person will be considered to be *handicapped* by a sensory, mental, or physical condition if he or she is *discriminated against because of the condition* and the condition is abnormal.

(b) "The presence of a sensory, mental, or physical handicap" includes, but is not limited to, circumstances where a sensory, mental, or physical condition:

(i) Is medically cognizable or diagnosable;

(ii) Exists as a record or history; or

(iii) Is perceived to exist, whether or not it exists in fact.

WAC 162-22-040(1); *Phillips v. Seattle*, 111 Wn.2d 903, 907, 766 P.2d 1099 (1989).[4] The Commission's definition of handicap for unfair practice claims is entitled to great weight as the construction given the statute by the administrative body whose duty it is to administer its terms. *Phillips*, 111 Wn.2d at 908; *Holland v. Boeing Co.*, 90 Wn.2d 384, 389, 583 P.2d 621 (1978). Further, the statutory protections against discrimination are to be liberally construed and their exceptions narrowly confined. RCW 49.60.020; *Phillips*, 111 Wn.2d at 908. While the definition contained in WAC 162-22-040(1) is somewhat problematic in that, if literally construed, it would permit virtually anyone with an "abnormal" condition to claim handicap, we need not reach the question whether the regulation is overbroad. This case presents a medically cognizable condition with a prescribed course of treatment. We therefore hold that gender dysphoria is a handicap within the purview of RCW 49.60.180(2) for purposes of determining whether an unfair practice has occurred.[5]

---

[4]*Phillips* specifically rejected the definition of handicap in WAC 162-22-030, promulgated to define "handicap" for a different purpose (affirmative action), as applicable in the context of determining whether an unfair practice has occurred. 111 Wn.2d at 907-08.

[5]Boeing argues that the Legislature did not intend RCW 49.60 to cover gender dysphoria. If that is indeed the legislative intent, the Legislature must

Under RCW 49.60.180(2), an unfair practice occurs when an employer discharges an employee on the basis of handicap. Boeing records reflect that Doe was terminated solely for having dressed in feminine attire. Doe's choice of attire was a direct product of the course of treatment indicated by the Benjamin Standards for her gender dysphoric condition. The trial court properly ruled that, by terminating Doe's employment solely on this basis, Boeing engaged in an unfair practice within the meaning of RCW 49.60.180(2).

## II
### REASONABLE ACCOMMODATION

Since we have determined that gender dysphoria is a handicap within the purview of RCW 49.60.180(2), the question arises whether any accommodation of Doe's handicap

---

be the one to say so. *See, e.g.*, specific exemptions from the Americans With Disabilities Act of 1990, 42 U.S.C.A. §§ 12208, 12211. It is not for us to make that determination. First, the statute on its face is not ambiguous; thus, there is no basis for going beyond the language of the statute. Second, even if the statute were ambiguous, the legislative history does not assist us in determining whether or not the Legislature intended to cover gender dysphoria. Boeing's argument that we should regard as instructive the fact that two amendments covering sexual orientation were proposed but not adopted is not persuasive in the absence of any evidence indicating that gender dysphoria was included in those amendments. Sexual orientation concerns the gender of one's partner; gender dysphoria concerns one's own gender. They are not the same. *Spelling "Relief" for Transsexuals: Employment Discrimination and the Criteria of Sex*, 4 Yale L. & Pol'y Rev. 125, 131-32 (1985).

We also decline to look to the Commission's decision in *[Doe] v. DSHS*, No. SPEU-0657-79-0 rather than to the Washington Supreme Court's decision in *Phillips*. *[Doe]*, in its entirety, reads as follows:

The Complainant alleges that Respondent refused to hire her because she is a transsexual, and that such action constitutes discrimination on the basis of a disability.

Staff recommended that the Commission find No Jurisdiction on the basis of the Commission's belief that the Legislature did not intend to include discrimination against transsexuals when it enacted the disability discrimination amendment in 1973.

*[Doe]* is unpersuasive for several reasons. First, it simply states a conclusion with no supporting reasoning. Second, there is no legislative history on which it was or could have been based. Third, it preceded *Phillips* which, by approving WAC 162-22-040(1), requires us to apply the regulation to a medically cognizable condition with a prescribed course of treatment. Gender dysphoria is such a condition.

was made by Boeing and, if so, whether that accommodation was reasonable. The trial court held that Boeing did accommodate Doe's need to dress in feminine attire in the following manner:

> Boeing allowed plaintiff to dress in a unisex fashion during the period in which plaintiff prepared for sex reassignment surgery, and offered to allow her to dress completely as a female following sex reassignment surgery.[6]

■ Affording Doe the same rights as other nongender dysphoric employees misses the point of the statute. RCW 49.60 requires an employer to take positive steps to accommodate an employee with a handicap or disability. *Holland*, 90 Wn.2d at 388-89. Where a handicap is involved, discrimination results from an employer's failure to take into account a person's unique characteristics. Thus, *identical* treatment may be the source of discrimination in the case of a handicapped employee, while different treatment, necessary to accommodate a handicap, can eliminate discrimina-

---

[6]The trial court also found that Boeing accommodated Doe in that:

Boeing complied with plaintiff's request to change her name to that of a female. With regard to rest rooms, Boeing accommodated plaintiff by allowing her to use offsite rest rooms over her lunch break during the presurgical period and by offering to allow her to use the women's rest rooms at Boeing following sex reassignment surgery. Boeing also protected plaintiff from harassment and allowed her to pursue a medical leave of absence or a transfer.

None of these actions constitutes a reasonable accommodation because all employees were entitled to the same privileges that were given Doe. Doe simply filled out the appropriate form to effectuate the name change after having already changed her name legally and on her driver's license. With respect to the use of offsite rest rooms, Doe was permitted to leave the premises at lunchtime anyway by virtue of her position as an engineer. All employees were presumably allowed to pursue a transfer or a medical leave of absence if they wished or when surgery was indicated. There is also nothing in the record to suggest that Boeing protected Doe from harassment; rather, the facts suggest that it was Boeing itself that effectively harassed Doe. The members of her work group were accepting and supportive. It was Boeing management that subjected her to daily inspections and refused to permit her to dress in the professional manner she preferred. Finally, that Boeing was willing to accommodate a postoperative transsexual by permitting him or her to dress according to the gender assumed after surgery should not be regarded as constituting an accommodation with respect to preoperative transsexuals, since these are distinct conditions.

tion. *Holland*, 90 Wn.2d at 388. The protected characteristics that state and federal discrimination statutes require employers to accommodate, religion and handicap in particular, differ fundamentally from those, such as race, gender and national origin, for which the same statutes mandate identical treatment. The entire purpose of accommodating the former is to take into account the *differences* that arise from the demands of religious belief or from a physical, mental or sensory condition. *Holland*, 90 Wn.2d at 388-89. This is unlike the statutory protection provided to groups who do not have special needs. There, the legislative purpose is to assure that they are *not* treated differently because of erroneous, stereotypical ideas about their talents, skills and capabilities. *Holland*, 90 Wn.2d at 388.

Boeing did no more than apply general, uniform policies to Doe in the same manner that it applied those policies to all other employees.[7] Allowing Doe to dress in a unisex fashion did not constitute an accommodation of her medically documented need to dress in feminine attire. By doing nothing more than simply treating Doe in a manner identical to that in which it treated other employees, Boeing failed to take into account Doe's unique characteristics or to take any positive steps to accommodate an employee with a handicap as required by RCW 49.60.180. We therefore hold that Boeing failed to reasonably accommodate the medical requirement that Doe dress in feminine attire prior to undergoing the prescribed surgery.

 The trial court also erred in allocating the burden of coming forward with evidence on the issue of reasonable accommodation. It erroneously placed on Doe the initial burden of showing that Boeing failed to accommodate her handicap or that the accommodation offered was not reasonable. Rather, the initial burden was on Boeing to

---

[7]While the trial court held that Boeing had a legitimate business purpose in regulating the dress of its employees, there is nothing in the record or case law to suggest that Boeing's legitimate business concerns should extend beyond assuring the professionalism of an employee's dress. Boeing concedes that Doe's dress was at all times professional.

show that the proposed accommodation would impose an undue hardship on the conduct of its business.

Whether an employer made a reasonable accommodation or whether the employee's requests would have placed an undue burden on the employer is a question of fact. *Phillips*, 111 Wn.2d at 910-11. The employee has the initial burden of presenting a prima facie case establishing the existence of a handicap and the need for an accommodation. *Holland*, 90 Wn.2d at 391; *Simmerman v. U-Haul Co.*, 57 Wn. App. 682, 687, 789 P.2d 763 (1990). Once a prima facie case has been established, the burden shifts to the employer to establish either that it did provide a reasonable accommodation or that the accommodation requested by the employee was an undue burden on the employer.[8] *Phillips*, 111 Wn.2d at 911 (any reasonable accommodation not requiring an undue burden would be required); WAC 162-22-080(1). If the employer meets its burden, the employee may rebut that showing. *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir. 1991); *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985); *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. 1981).

Doe established a prima facie case by proving she was gender dysphoric and demonstrating her consequent need for some accommodation of her condition. The burden then shifted to Boeing to establish either that it did provide reasonable accommodation or that the accommodation requested by the employee was an undue burden on the employer. Boeing did neither. We therefore reverse the trial court's finding that Boeing reasonably accommodated Doe in the matter of dress, enter judgment for Doe on the question of liability, and remand for trial on the remaining issues.

Doe's request for attorney fees on appeal pursuant to RCW 49.60.030(2) is granted subject to the requirements of

---

[8]The duty on the part of the employee to cooperate noted by Boeing and enunciated in *Dean v. Municipality of Metro Seattle*, 104 Wn.2d 627, 637-38, 708 P.2d 393 (1985) is not an issue in this analysis. Even if it were, there is ample evidence in the record of Doe's efforts to cooperate.

RAP 18.1. *Blair v. WSU*, 108 Wn.2d 558, 740 P.2d 1379 (1987); *Holland*, 90 Wn.2d at 393; *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 450, 810 P.2d 952, 815 P.2d 812 (1991).

Reversed and remanded.

WEBSTER, A.C.J., and COLEMAN, J., concur.

Review granted at 119 Wn.2d 1007 (1992).