[No. 59117-2.    En Banc.    March 4, 1993.]

JANE DOE, *Respondent,* v. THE BOEING COMPANY, *Petitioner.*

*Perkins Coie,* by *Valerie L. Hughes* and *Charles N. Eberhardt,* for petitioner.

*Kelby D. Fletcher* of *Peterson, Bracelin, Young, Putra, Fletcher & Zeder, Inc., P.S.,* and *Lonnie Davis,* for respondent.

GUY, J. — Jane Doe, a biological male who was planning to have sex reassignment surgery, sought damages for employment discrimination, alleging an unaccommodated handicap under RCW 49.60, Washington's Law Against Discrimination. She[1] was discharged by the Boeing Company for wearing "excessively" feminine attire in violation of company directives. The trial court ruled in favor of Boeing on the issue of liability. The Court of Appeals reversed and entered judgment for Doe. We granted Boeing's petition for review and reverse the Court of Appeals.

FACTS

Jane Doe was hired as a Boeing engineer in 1978. At the time of hire, Doe was a biological male and presented herself as such on her application for employment. In 1984, after years of struggling with her sexual identity, Doe concluded that she was a transsexual. A transsexual is a person who

---

[1]Doe has completed sex reassignment surgery and will be referred to in this opinion with feminine pronouns.

has a sense of discomfort and inappropriateness about his or her anatomical sex and wishes to be rid of his or her genitals and live as a member of the opposite sex. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § 302.50 (3d rev. ed. 1987). Transsexualism is also known in the psychiatric and medical communities as gender dysphoria.

Dr. Timothy Smith, Doe's treating physician, confirmed Doe's self-assessment and diagnosed Doe as gender dysphoric. In April 1984, Doe began hormone treatments, as prescribed by Dr. Smith, as well as electrolysis treatments. In December 1984, Doe legally changed her masculine name to a feminine name.

In March 1985, Doe informed her supervisors, management and co-workers at Boeing of her transsexualism and of her intent to have sex reassignment surgery. Doe informed Boeing of her belief that in order to qualify for sex reassignment surgery, she would have to live full time, for 1 year, in the social role of a female. Doe based her belief on discussions with her treating psychologist and her physician about a treatment protocol for transsexuals known as the Harry Benjamin International Gender Dysphoria Standards (Benjamin Standards). Benjamin Standard 9 states: "Genital sex reassignment shall be preceded by a period of at least 12 months during which time the patient lived full-time in the social role of the genetically other sex." Clerk's Papers, at 313.

Upon being notified of Doe's intentions, Boeing informed Doe that while Doe was an anatomical male, she could not use the women's rest rooms or dress in "feminine" attire. Boeing informed Doe that she could dress as a woman at work and use the women's rest rooms upon completion of her sex reassignment surgery.

While Doe was an anatomical male, Boeing permitted Doe to wear either male clothing or unisex clothing. Unisex clothing included blouses, sweaters, slacks, flat shoes, nylon stockings, earrings, lipstick, foundation, and clear nail polish. Doe was instructed not to wear obviously feminine clothing such

12

as dresses, skirts, or frilly blouses. Boeing applied its unwritten dress policy to all employees, which included eight other transsexuals who had expressed a desire to have sex reassignment surgery while working for Boeing. Both Doe's psychologist and treating physician testified that what Doe was allowed to wear at Boeing was sufficiently feminine for Doe to qualify for sex reassignment surgery.

Between June and late September 1985, Boeing management received approximately a dozen anonymous complaints regarding Doe's attire and use of the women's rest rooms. On October 25, 1985, following the receipt of a complaint about Doe using the women's rest room, Boeing issued Doe a written disciplinary warning.[2] The warning reiterated Boeing's position on acceptable attire and rest room use and stated that Doe's failure to comply with Boeing's directives by November 1, 1985, would result in further corrective action, including termination. During this "grace" period, Doe's compliance with Boeing's "acceptable attire" directive was to be monitored each day by Doe's direct supervisor. Doe was told that her attire would be deemed unacceptable when, in the supervisor's opinion, her dress would be likely to cause a complaint were Doe to use a men's rest room at a Boeing facility. No single article of clothing would be dispositive. Doe's overall appearance was to be assessed.

Doe's transsexualism did not interfere with her ability to perform her job duties as a software engineer at Boeing. There was no measurable decline in either her work group's performance or in Doe's own job performance. There was no testimony to indicate that Boeing's dress restrictions hindered Doe's professional development.

On November 4, 1985, the first day Doe worked after the grace period, Doe wore attire that her supervisor considered acceptable. Doe responded that she was disappointed that her attire was acceptable, and that she would "push it" the next day. By "push it", Doe testified that she meant she

<hr>

[2]After receiving the disciplinary warning, Doe limited her use of rest rooms to off-site women's rest rooms at lunchtime. The issue of rest room use does not alter our analysis since neither party contends this was a basis for her discharge.

would wear more extreme feminine attire. The next day, Doe came to work wearing similar attire, but she included as part of her outfit a strand of pink pearls which she refused to remove. This outfit was similar to one she had been told during the grace period was unacceptable in that the addition of the pink pearls changed Doe's look from unisex to "excessively" feminine. Doe was subsequently terminated from her position at Boeing as a result of her willful violation of Boeing's directives.

Doe filed a handicap discrimination action against Boeing pursuant to RCW 49.60, Washington's Law Against Discrimination (hereafter Act). The parties agreed to bifurcated proceedings and to a nonjury trial on the issue of liability. The trial court held that Doe was "temporarily handicapped" under its construction of WAC 162-22-040. The trial court further concluded that Boeing's actions reasonably accommodated Doe's condition and, thus, ruled in favor of Boeing on liability.

On appeal, Doe challenged the trial court's determination that Boeing reasonably accommodated her gender dysphoria. Boeing cross-appealed the trial court's characterization of gender dysphoria as a handicap under RCW 49.60. Finding that Doe was handicapped and that Boeing failed to accommodate her condition, the Court of Appeals reversed the judgment, entered judgment for Doe on the issue of liability, and remanded the case for determination of Doe's damages and attorney fees on appeal. *Jane Doe v. Boeing Co.*, 64 Wn. App. 235, 823 P.2d 1159 (1992). We reverse the Court of Appeals.

## ISSUES

This case presents two issues for review. First, is Jane Doe's gender dysphoria a "handicap" under RCW 49.60.180? We hold that Doe's gender dysphoria is not a handicap under the Act. The definition of "handicap" for enforcement purposes in unfair practice cases under RCW 49.60.180, as defined in WAC 162-22-040, requires factual findings of both (1) the presence of an abnormal condition, and (2) employer discrimination against the plaintiff *because* of that condition.

While gender dysphoria is an abnormal condition, we hold that Doe was not "handicapped" by her gender dysphoria because Boeing did not discharge her because of that condition.

Second, did Boeing have to provide Doe's preferred accommodation under RCW 49.60.180? We hold that the scope of an employer's duty to reasonably accommodate an employee's abnormal condition is limited to those steps necessary to enable the employee to perform his or her job. We hold that Boeing's actions met this standard and did not discriminate against Doe by reason of her abnormal condition.

ANALYSIS
I
Background

Washington's Law Against Discrimination provides that it is an unfair practice for any employer "[t]o discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap." RCW 49.60-.180(2). The statute does not define "handicap". The statute delegates the authority to the Washington State Human Rights Commission (hereafter Commission) to adopt and promulgate rules and regulations to carry out the Act's provisions. RCW 49.60.120(3). Pursuant to this delegation, the Commission promulgated WAC 162-22-040, which defines handicap for the purpose of determining whether an unfair practice under RCW 49.60.180 has occurred. The regulation provides that:

> (a) A condition is a "sensory, mental, or physical handicap" if it is an abnormality and is a reason why the person having the condition did not get or keep the job in question . . .. In other words, for enforcement purposes a person will be considered to be *handicapped* by a sensory, mental, or physical condition if he or she is *discriminated against because of the condition* and the condition is abnormal.
>
> (b) "The presence of a sensory, mental, or physical handicap" includes, but is not limited to, circumstances where a sensory, mental, or physical condition:

(i)   Is medically cognizable or diagnosable;
(ii)  Exists as a record or history; or
(iii) Is perceived to exist, whether or not it exists in fact.

WAC 162-22-040(1)(a), (b).

■ ■ We adopted the Commission's definition of "handicap" in *Phillips v. Seattle*, 111 Wn.2d 903, 906-08, 766 P.2d 1099 (1989), which involved an unfair practice claim brought under RCW 49.60.180(2). We give the Commission's definition of "handicap" for unfair practice claims great weight since it is the construction of the statute by the administrative body whose duty it is to administer its terms. *Phillips*, 111 Wn.2d at 908.

Under WAC 162-22-040(1)(a), the question of whether a person is "handicapped" is a question of fact and not a question of law. *Phillips*, 111 Wn.2d at 909. As we stated in *Phillips*, the WAC definition requires both the "presence" of a handicapping condition and evidence that this condition was the reason for the discharge. *Phillips*, 111 Wn.2d at 907. The inquiry as to the "presence" of a handicapping condition under WAC 162-22-040(1)(b) is factual in nature because it depends upon expert medical testimony, relevant medical documentation, and state of mind. *Phillips*, at 909-10. The question of whether a condition was the reason for a dismissal is also a factual inquiry because it depends upon documentation of the employer, testimony regarding the dismissal, and other relevant facts. *Phillips*, at 909.

We acknowledge that the definition of "handicap" as defined by WAC 162-22-040 is problematic. The WAC definition requires a factual finding of discrimination *because of the condition* in order to determine whether the condition is a "handicap" in the first place. The trial court had difficulty applying the WAC definition[3] and found that while Doe was

---

[3]The trial court read WAC 162-22-040 in the context of this case to define "handicap" as "an abnormality which has an effect on the individual's ability to perform his or her job such that the abnormality needs to be accommodated by the employer and that absent accommodation discrimination would result." Conclusion of law 5.

"temporarily handicapped" by her gender dysphoria, she was reasonably accommodated by Boeing. Under the WAC definition, the trial court should have held that Doe was not "handicapped". The Court of Appeals also commented that the definition was problematic, but it rejected the trial court's narrow construction of the definition and declared gender dysphoria a "handicap" as a matter of law. *Doe*, 64 Wn. App. at 240.

In upholding the Act to an earlier vagueness challenge, we pronounced that "[m]en of ordinary intelligence undoubtedly can understand what constitutes a 'handicap' within the context of RCW 49.60.180(1)". *Chicago, M., St. P., & Pac. R.R. v. State Human Rights Comm'n*, 87 Wn.2d 802, 805-06, 557 P.2d 307 (1976). Gender dysphoria is a medically cognizable and diagnosable condition. Those who suffer from the condition surely endure great mental and emotional agony. *See* Green, *Spelling "Relief" for Transsexuals: Employment Discrimination and the Criteria of Sex*, 4 Yale L. & Pol'y Rev. 125 (1985). However, unless a plaintiff can prove he or she was discriminated against *because of the abnormal condition*, his or her condition is not a "handicap" for purposes of the Act. WAC 162-22-040; *see also* Miller, *Hiring the Handicapped: An Analysis of Laws Prohibiting Discrimination Against the Handicapped in Employment*, 16 Gonz. L. Rev. 23, 31 (1980-1981).

Despite the circular nature of the applicable regulation, we follow our holding in *Phillips* that the definition of "handicap" for enforcement purposes under RCW 49.60.180, as defined in WAC 162-22-040, requires factual findings of both (1) the presence of an abnormal condition, and (2) employer discrimination against the employee plaintiff *because* of that condition. One is not "handicapped" for purposes of enforcing an unfair practice claim unless both elements are satisfied.

## II
### Gender Dysphoria as a Handicap

We first address the question of whether Doe's gender dysphoria is a handicap under the Act. We conclude that

Doe is not "handicapped" for the purposes of pursuing an unfair practice claim under RCW 49.60.180.

The first inquiry under the WAC definition is whether there is present an abnormal condition. It is uncontested that gender dysphoria is an abnormal, medically cognizable condition with a prescribed course of treatment. Assuming the presence of an abnormal condition, the next inquiry is whether the employer discriminated against the employee because of that condition. Under RCW 49.60, a finding of liability is dependent upon proof of discrimination. *See Dean v. Municipality of Metro Seattle*, 104 Wn.2d 627, 641, 708 P.2d 393 (1985). In general, the nature of this inquiry is whether the employer took action against an employee because of the employee's condition, such as discharge, reassignment, or harassment, or whether the employer failed to take such steps as would be reasonably necessary to accommodate the employee's condition.[4] Failure to reasonably accommodate a "handicapped" employee constitutes discrimination under the Act. *Dean*, at 632; *see also Holland v. Boeing Co.*, 90 Wn.2d 384, 389, 583 P.2d 621 (1978).

Boeing argues that Doe's condition of gender dysphoria is not a "handicap" under the Act because there is no evidence of discrimination. We agree. The record substantially supports the trial court's findings that Boeing did not discriminate against Doe because of her condition. Boeing discharged Doe because she violated Boeing's directives on acceptable attire, not because she was gender dysphoric. Doe was treated in a respectful way by both her peers and supervisors at Boeing. Doe's supervisor consistently rated her work as satisfactory on her performance evaluations. While complaints were filed with Boeing management about Doe's use of the women's rest room, the record is void of any

---

[4]Types of accommodations might be, for example, the construction of ramps to accommodate wheelchairs, installation of air filtering devices to accommodate respiratory ailments, permitting rest periods to accommodate a physical condition, changes to a work station to accommodate the medical needs of an employee, enhanced lighting or enhanced audio equipment. See also footnote 5.

evidence that Doe suffered harassment because of her use of the rest room or because of her attire.

Inasmuch as Boeing did not discharge Doe based on her abnormal condition but on her refusal to conform with directives on acceptable attire, we must turn our attention to whether Boeing discriminated against Doe by failing to reasonably accommodate her condition of gender dysphoria.

## III
### Scope of Duty To Accommodate

The Legislature intended the Act to prohibit discrimination in employment against individuals who suffer an abnormal physical, mental, or sensory "handicap". Laws of 1973, 1st Ex. Sess., ch. 214, § 1, p. 1648; *see generally* RCW 49.60.010, .030(1)(a). We recognize that employers have an affirmative obligation to reasonably accommodate the sensory, mental, or physical limitations of such employees unless the employer can demonstrate that the accommodation would impose an undue hardship on the conduct of the employer's business. WAC 162-22-080; *Dean*, 104 Wn.2d at 632. The issue before us is whether Boeing had a duty to accommodate Doe's preferred manner of dress prior to her sex reassignment surgery. We hold that the scope of an employer's duty to accommodate an employee's condition is limited to those steps reasonably necessary to enable the employee to perform his or her job. *See generally* RCW 49.60.180(1); WAC 162-22-050(3); *Clarke v. Shoreline Sch. Dist. 412*, 106 Wn.2d 102, 119, 720 P.2d 793 (1986).

Doe contends that Boeing's dress code failed to accommodate her condition and, thus, was discriminatory. We disagree. The record substantially supports the trial court's findings that Boeing reasonably accommodated Doe in the matter of dress by allowing her to wear unisex clothing at work. Despite this accommodation, Doe determined unilaterally, and without medical confirmation, that she needed to dress as a woman at her place of employment in order to qualify for sex reassignment surgery. Our review of the record is limited to determining whether substantial evi-

dence exists to support the trial court's findings of fact. *Fred Hutchinson Cancer Research Ctr. v. Holman,* 107 Wn.2d 693, 712, 732 P.2d 974 (1987). We find substantial support for the trial court's finding that Doe had no medical need to dress as a woman at work in order to qualify for her surgery.

> [P]laintiff's experts declined to state that any particular degree of feminine dress was required in order for plaintiff to fulfill any presurgical requirements. In fact, the evidence was uncontradicted that the unisex dress permitted by Boeing . . . would not have precluded plaintiff from meeting the Benjamin Standards presurgical requirement of living in the social role of a woman.

Finding of fact 39. The trial court's findings are well supported by the testimony of Doe's own treating physician and psychologist, as well as other medical evidence. We treat findings of fact which are supported by substantial evidence as verities on appeal. *Beeson v. ARCO,* 88 Wn.2d 499, 503-04, 563 P.2d 822 (1977). The Court of Appeals' contrary finding that Doe had a "medically documented need" to dress as a woman is error. *See Doe,* 64 Wn. App. at 243. "[A]n appellate court will not substitute its judgment for that of the trial court even though it might have resolved the factual dispute differently." *Beeson,* at 503.

Doe argues, however, that the trial court's findings on this point are irrelevant since Boeing did not have the benefit of such medical testimony prior to enforcing its dress policy. We disagree. The trial court found that Boeing's policy on accommodation of transsexuals was developed with input from Boeing's legal, medical, personnel and labor relations departments. The Boeing medical department consulted with outside experts in the field and reviewed the literature on transsexualism. The trial court also held that Boeing has a legitimate business purpose in defining what is acceptable attire and in balancing the needs of its work force as a whole with those of Doe. The record supports the trial court's findings of fact and conclusions of law that Boeing developed and reasonably enforced a dress policy which balanced its legitimate business needs with those of its employees.

Doe further argues that, as a gender dysphoric, her perceived needs should have been accommodated. We disagree. The Act does not require an employer to offer the employee the precise accommodation he or she requests. *Barron v. Safeway Stores, Inc.*, 704 F. Supp. 1555, 1567 (E.D. Wash. 1988). Her perceived need to dress more completely as a woman did not impact her job performance. Both the trial court and the Court of Appeals found that Doe's condition had no measurable effect on either Doe's job performance or her work group's performance. Finding of fact 43; *Doe*, 64 Wn. App. at 238 n.3. That is not to say that Doe did not have emotional turmoil over the changes that were taking place in her life, but that turmoil did not prevent her from performing her work satisfactorily. Based on the record, there was no need for any further action by Boeing to facilitate Doe in the performance of job-related tasks.

Doe also argues that Boeing failed to accommodate her unique condition because its dress policy was uniformly applied. The Court of Appeals agreed, stating that *"identical* treatment may be the source of discrimination in the case of a handicapped employee, while different treatment, necessary to accommodate a handicap, can eliminate discrimination." *Doe*, at 242 (citing *Holland v. Boeing Co.*, 90 Wn.2d 384, 388, 583 P.2d 621 (1978)). We stated in *Holland*, however, that identical treatment *may be* a source of discrimination "*only when the work environment fails to take into account the unique characteristics of the handicapped person.*" (Some italics ours.) *Holland*, 90 Wn.2d at 388. While Boeing's dress code was uniformly applied, such generically applied work rules are not discriminatory per se unless they affect an employee's ability to perform his or her job. In Doe's case, "different" treatment was not required to accommodate her condition because her condition did not affect her ability to perform her job.

In determining what is a reasonable accommodation, the evaluation must begin with the job specifications and how those tasks are impacted by the abnormal condition. *See Kimbro v. ARCO*, 889 F.2d 869, 879 (9th Cir. 1989). In the

case of trauma or physical deterioration, the answers are generally apparent and the issue becomes one of whether the accommodation is reasonable,[5] not what is the accommodation. In Doe's case, the analysis is not so simple. Doe's job performance was unchanged by reason of her condition. Based on the record, there was no accommodation that Boeing could have provided that would have aided Doe in the performance of her work. How she dressed or appeared had no impact on the physical or mental requirements of her employment responsibilities.

The concept of "reasonable" accommodation is linked to necessity. The employer's duty to accommodate is appropriately limited to removing sensory, mental or physical impediments to the employee's ability to perform his or her job. Doe's gender dysphoria did not impede her ability to perform her engineering duties. Therefore, Boeing had no duty to provide any further accommodation to Doe beyond what it provided for all employees.

## CONCLUSION

The definition of "handicap" for enforcement purposes under RCW 49.60.180, as defined in WAC 162-22-040, requires factual findings of both (1) the presence of an abnormal condition, and (2) employer discrimination against the employee plaintiff because of that condition. We hold that under this definition Doe was not "handicapped" for purposes of RCW 49.60.180 because Boeing did not discriminate against her because of her condition. We further conclude that Boeing's actions were reasonable, and that no affirmative accommodation of Doe's condition was required because the scope of an employer's duty to accommodate an employee's condition is

---

[5]*See Dean*, at 637 (employer could have accommodated an employee suffering from degenerative eye disease by informing him of job openings for which he might be qualified); *Holland*, at 391 (employer could have accommodated an employee with cerebral palsy by transferring him from a position in which employee was unable to perform acceptably to a position in which he could perform); *Kimbro*, 889 F.2d at 879 (employer could have accommodated employee suffering from cluster migraines by offering him a leave of absence). It is a question of fact as to whether a particular accommodation is reasonable. *Phillips*, at 911.

22

limited to those steps reasonably necessary to enable the employee to perform his or her job.

Doe's request for attorney fees is denied since she is entitled to attorney fees only if her claim under the Act is meritorious. RCW 49.60.030(2); *Rose v. Hanna Mining Co.*, 94 Wn.2d 307, 313, 616 P.2d 1229 (1980).

The Court of Appeals is reversed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, and JOHNSON, JJ., concur.

Reconsideration denied April 5, 1993.