81 P.3d 901 (2003)
119 Wash.App. 453
Kenneth McCLARTY, Appellant,
v.
TOTEM ELECTRIC, Respondent.
No. 29577-6-II.
Court of Appeals of Washington, Division 2.
December 23, 2003.
*903 Daniel Foster Johnson, Short, Cressman & Burgess, Seattle, WA, for Appellant.
William G. Jeffery, Elisabeth Anne Kranz, The Jeffery Group PLLC, Seattle, WA, for Respondent.
*902 HUNT, C.J.
Kenneth McClarty appeals the trial court's summary judgment dismissal of his lawsuit against his former employer, Totem Electric, for violating RCW 49.60.180, the Washington Law Against Discrimination. In his complaint, McClarty claimed that Totem Electric fired him because he suffered from carpal tunnel syndrome and required accommodations to perform his work.
McClarty argues on appeal that the trial court improperly (1) applied the reasonable accommodation standard to his disparate treatment claim; and (2) granted summary judgment to Totem Electric on both his disparate treatment claim and his reasonable accommodation claim.
Finding insufficient facts to support McClarty's failure-to-accommodate claim, we affirm the trial court's grant of summary *904 judgment on this claim. Holding that the trial court erroneously applied the Pulcino[1] test to McClarty's disparate treatment claim, we reverse summary judgment on this claim and remand for trial.

FACTS

I. EMPLOYMENT
In April 1998, Totem Electric hired Kenneth McClarty to work as an apprentice electrician on the Old Tumwater School renovation. Totem claims that one week after being hired, McClarty told Rick Sare, the general foreman, that he had attention deficit disorder. McClarty said he needed to be shown, rather than told, how to do things. Sare showed McClarty how to bend conduit, but, by McClarty's own admission, he had little success.
In addition to the electrical work, the renovation project required digging trenches for plastic pipe and electrical transformers. Trench digging required two workers: one person to operate the backhoe and one person to dig and to rake manually inside the trench. McClarty was assigned to the manual trench work.
Totem also had McClarty perform various other tasks, which required continuous use of his hands, wrists, and arms in a repetitive manner. McClarty began experiencing pain in his hands. He also experienced extended loss of sensation in his extremities, and he complained that his hands were falling asleep at night.

II. CARPAL TUNNEL SYNDROME
McClarty asserts that (1) he first told Sare about his injury a few weeks after he began experiencing pain; (2) then, every month thereafter, he told Sare that the pain was getting worse; and (3) he asked for a break from the trench work, asking Sare to assign another apprentice.
Sare asserts that (1) the first time McClarty mentioned his injury was on July 28, 1998; (2) after which Sare immediately provided McClarty with an injured worker's packet containing workers' compensation materials and notified Totem's Safety Director, Jim Portman; and (3) Sare told McClarty to see a doctor.
McClarty and Totem agree that McClarty saw a physician, who diagnosed him with bilateral carpal tunnel syndrome and put him on a modified work regimen, limiting digging and jackhammering activities to one-third of his workday for a six-month period. On July 31, 1998, McClarty gave Sare his doctor's note.
McClarty claims that five hours later, Sare gave him a "Reduction in work forces/ lay-off" slip, telling McClarty that Sare was terminating him because of his carpal tunnel syndrome. According to McClarty, at the time of his discharge, all of the trenches "of any consequence" had been dug, and 99 percent of all the trench work outside the buildings had been completed.
Totem contends that after Sare received the note, (1) Sare discussed the situation with Jim Portman and others at Totem; (2) Sare determined that there was no more work for McClarty based on the doctor's restriction; and (3) then Portman gave McClarty his reduction in force or employee termination notice and paycheck. Totem denies McClarty's claim that Sare said he terminated McClarty because of his carpal tunnel syndrome or that it is Totem's policy to terminate injured workers.

III. PROCEDURAL HISTORY
McClarty filed a complaint in federal court, pro se, alleging that (1) Totem and Local 76 of the International Brotherhood of Electrical Workers violated RCW 49.60.180, the Washington Law Against Discrimination (WLAD); (2) Local 76 committed unfair labor union practices in violation of RCW 49.60.190; (3) Totem discharged McClarty from employment and Local 76 discharged him from its apprentice program in retaliation for his filing a Labor & Industries claim in violation of RCW 51.48.025; (4) both Totem and Local 76 wrongfully terminated and breached his contract of employment and participation in the apprentice program; and *905 (5) he was entitled to a declaratory judgment for the requested relief.
The United States District Court dismissed Local 76 from the complaint and transferred the case to state court. McClarty filed a motion for partial summary judgment, but the trial court denied the motion, citing, but not identifying, disputed issues of material fact.
Totem then filed a motion for summary judgment. The court granted Totem's motion for summary judgment on all claims, and denied McClarty's motion to reconsider. McClarty appeals.

ANALYSIS

I. PRESERVATION OF CLAIMS FOR REVIEW
Totem argues that McClarty's reasonable accommodation claim is not properly before this court on appeal because he did not raise it below and he conceded during oral argument that the claim was appropriate for summary judgment. Totem similarly argues that McClarty's claim for exacerbation of his carpal tunnel syndrome is not properly before this court because he did not raise it below. We disagree with Totem on the first point, but agree on the second.

A. Reasonable Accommodation
Under RAP 9.12, we can consider "only evidence and issues called to the attention of the trial court." RAP 9.12.[2] Below, Totem addressed both disparate treatment and reasonable accommodation in its Memorandum in Support of Summary Judgment,[3] thereby, sufficiently calling the issue of reasonable accommodation to the trial court's attention. Accordingly, we may review this claim on appeal.
Totem also claims that McClarty cannot appeal summary judgment on the reasonable accommodation claim because he conceded the issue at oral argument below. During oral argument on the motion for summary judgment, Totem noted that McClarty had failed to raise the reasonable accommodation claim in his opposition to summary judgment. In response, the court questioned McClarty:
The Court: You have argued, and continued to assert, that you have a valid wrongful termination claim.
. . . .
The Court: So the motion to dismiss is granted as to the retaliation claim. How about the failure to accommodate claim?
Mr. McClarty: This is mostly a discriminatory termination.
Report of Proceedings (RP) at 4. Totem argues that McClarty's response constituted a concession barring any appeal on the claim. We disagree.
McClarty's response to the trial court was not a concession constituting a waiver of the merits of his failure-to-accommodate claim. At most, McClarty's response to the trial court's question was equivocal. In our view, the plain language that he used shows merely that the primary focus of his case was wrongful discrimination; failure to accommodate played a secondary role. We hold that McClarty did not concede the reasonable accommodation claim below and, therefore, it is properly before us on appeal.

B. Exacerbation of Injuries
The general rule is that when an appellate court reviews a summary judgment order, it will not consider an argument that was not made to the trial court. RAP 9.12; Wash. Fedn. of State Employees v. Office of *906 Fin. Mgmt., 121 Wash.2d 152, 157, 849 P.2d 1201 (1993). Unlike the reasonable accommodation claim that was brought to the trial courts attention (however inartfully), neither party addressed the exacerbation issue below. Therefore, it is not properly before us and we do not review it.

II. BRIEF FORMAT
Totem urges us to disregard the facts recited in the Summary of the Case in McClarty's amended opening brief because he failed to cite to the record. RAP 10.3(a)(4) requires appellants to make a "fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement."
But RAP 1.2 allows us to review a matter, notwithstanding non-compliance with the rules, "where justice demands." Our Supreme Court has interpreted RAP 1.2 to mean that courts can depart from the rules if there is "no discernible or practical prejudice flowing to respondent, no unfairness to the trial judge, and no inconvenience to [the] court." Millikan v. Bd. of Dir. of Everett Sch. Dist. No. 2, 92 Wash.2d 213, 216, 595 P.2d 533 (1979) (quoting King County Republican Cent. Comm. v. Republican State Comm., 79 Wash.2d 202, 208, 484 P.2d 387 (1971) (allowing appellants to file certification of facts after required deadline)).
Although McClarty failed to cite to the record in his Summary of the Case, he does cite to the record in the Pertinent Facts section of his Statement of the Case. Moreover, Totem does not dispute the facts that McClarty presents in his brief. And we find no prejudice to Totem, unfairness to the trial court, or inconvenience to this court. Thus, we exercise our discretion under RAP 1.2 and consider the facts in the Summary of the Case in McClartys amended opening brief.
Totem also urges us to disregard McClarty's cite to Pertinent Facts in his amended opening brief because he did not cite them below in opposition to Totem's motion for summary judgment. Our Supreme Court, however, has rejected the notion that we can decide an appeal on only the evidence that the trial court expressly considered. Mithoug v. Apollo Radio of Spokane, 128 Wash.2d 460, 462, 909 P.2d 291 (1996) (allowing review of depositions filed in the case but not expressly considered by the trial court).
Here, even though the sources of the facts (Defendant's Response to Plaintiff's Partial Motion for Summary Judgment and the Affidavit of William G. Jeffrey) were not enumerated in the order granting summary judgment, both supporting documents were filed with the trial court and were properly brought to the trial court's attention. Mithoug, 128 Wash.2d at 462, 909 P.2d 291. Consequently, the facts in McClarty's amended opening brief are properly before us for consideration in this appeal.

III. SUMMARY JUDGMENT

A. Standard of Review
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.
After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13-14, 721 P.2d 1 (1986). The nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. The court should grant summary judgment only if, based on all the evidence, reasonable persons could *907 reach but one conclusion. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.

B. Disability Claims Under the WLAD
We first address the applicable law under the Washington Law Against Discrimination (WLAD) as it applies to disparate treatment and failure-to-accommodate claims. The Legislature enacted the WLAD to prevent discrimination based on, inter alia, age, race, gender, and disability.[4] RCW 49.60.010. The relevant WLAD provision prohibits an employer from discharging or barring any person from employment on the basis of, among other things, "the presence of any sensory, mental, or physical disability." RCW 49.60.180.
This provision gives rise to two causes of action: a disparate treatment claim and a failure-to-provide-reasonable-accommodation claim. Pulcino v. Fed. Express Corp., 141 Wash.2d 629, 640, 9 P.3d 787 (2000). "An employer who discharges, reassigns, or harasses for a discriminatory reason faces a disparate treatment claim; an employer who fails to accommodate the employee's disability, faces an accommodation claim." Pulcino, 141 Wash.2d at 640, 9 P.3d 787 (quoting Hill v. BCTI Income Fund-I, 97 Wash.App. 657, 667, 986 P.2d 137 (1999)). Both types of claims require an employee to establish that he suffers from a disability. But these cases do not make clear how the employee must do this.

C. Definition of "Disability"
The Legislature created the Human Rights Commission[5] (Commission) to facilitate elimination and prevention of discriminatory acts prohibited by the WLAD. RCW 49.60.010. The Commission defines "disability" as being "short for the statutory term `the presence of any sensory, mental, or physical disability.'" WAC 162-22-020(1). The WAC further provides that a condition is a "`sensory, mental, or physical disability' if it is an abnormality and is a reason why the person having the condition did not get or keep the job in question" ("WAC definition"). WAC 162-22-020(2)(c).
Courts have applied the WAC definition of disability in both disparate treatment and reasonable accommodation cases. In Phillips v. City of Seattle, our Supreme Court applied the WAC definition to an unfair employment practices claim involving an alleged discriminatory discharge. 111 Wash.2d 903, 907, 766 P.2d 1099 (1989). The Court interpreted the WAC as requiring "the `presence' of a handicap and that this condition be the reason for the discharge." Phillips, 111 Wash.2d at 907, 766 P.2d 1099; see also, Hume v. Am. Disposal Co., 124 Wash.2d 656, 670, 880 P.2d 988 (1994) (applying the WAC definition to a constructive discharge claim under the WLAD). In Doe v. Boeing Co., the Court applied the same definition to a reasonable accommodation claim. 121 Wash.2d 8, 15, 846 P.2d 531 (1993). Although the Doe Court applied the WAC definition, it noted that the definition was "problematic" and recognized its "circular nature." Doe, 121 Wash.2d at 15, 16, 846 P.2d 531.
The issue of the proper definition of disability was again before the Court seven years later in Pulcino v. Federal Express Corp., 141 Wash.2d 629, 9 P.3d 787 (2000). The trial court had dismissed Pulcino's suit against Federal Express for disability discrimination under RCW 49.60.030, and the Court of Appeals affirmed. Pulcino, 141 Wash.2d at 637, 9 P.3d 787. Our Supreme Court agreed with Pulcino that the Court of Appeals had failed to consider her claim under a reasonable accommodation theory, as opposed to discriminatory discharge. Pulcino, 141 Wash.2d at 638, 639, 9 P.3d 787.

D. Reasonable Accommodation

1. Standard
In Pulcino, the Court took the opportunity to address problems with the WAC definition of disability. The Court found that the circular definition made it "unworkable" when applied to an accommodation theory. *908 Pulcino, 141 Wash.2d at 641, 9 P.3d 787. The Court then articulated a new test:
[A]n accommodation claimant satisfies the "handicap" element of his or her claim by proving that (1) he or she has/had a sensory, mental, or physical abnormality and (2) such abnormality has/had a substantially limiting effect upon the individuals ability to perform his or her job.
Pulcino, 141 Wash.2d at 641, 9 P.3d 787 (emphasis added). The Court noted that such a showing would "rule[] out the trivial." Pulcino, 141 Wash.2d at 642, 9 P.3d 787.
The following year, the Court again addressed the standard for accommodation claims in Hill v. BCTI Income Fund-I, 144 Wash.2d 172, 23 P.3d 440 (2001). The trial court had directed a verdict in favor of BCTI, dismissing Hill's disability discrimination claim brought under a reasonable accommodation theory. Hill, 144 Wash.2d at 178, 23 P.3d 440. Our Supreme Court agreed that the WAC definition was circular and had proved problematic; so it applied the Pulcino test. Hill, 144 Wash.2d at 192-93, 23 P.3d 440.
The Hill court articulated the problem with the WAC definition of disability primarily in terms of the McDonnell Douglas[6] burden-shifting paradigm. Under McDonnell Douglas, where the employee lacks direct evidence of discrimination, the initial burden is on the employee to make a prima facie case of unlawful discrimination. Hill, 144 Wash.2d at 181, 23 P.3d 440 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the employee is successful, a rebuttable presumption of discrimination arises, and the burden shifts to the employer to "produce admissible evidence of a legitimate, nondiscriminatory explanation for the adverse employment action." Hill, 144 Wash.2d at 181, 23 P.3d 440. If the employer can satisfy this intermediate burden, the presumption disappears and the burden shifts back to the employee, who must then show that the employers proffered reason is merely a pretext. Hill, 144 Wash.2d at 182, 23 P.3d 440.
The problem, the Hill court observed, was that the WAC definition of disability collapsed the employee's initial burden (to establish a prima facie case of discrimination) into the employee's ultimate burden in the case (to prove the adverse employment action was discriminatory). Hill, 144 Wash.2d at 192 n. 19, 23 P.3d 440. The Court replaced the second prong of the WAC definition (showing that abnormality was the reason for discriminatory discharge) with the second prong from Pulcino (requiring employee to show that the abnormality substantially limited his or her ability to function). Hill, 144 Wash.2d at 192 n. 19, 23 P.3d 440. According to Hill, this scheme would lighten the evidentiary burden on employees in reasonable accommodation claims. Hill, 144 Wash.2d at 192 n. 19, 23 P.3d 440.
After Pulcino and Hill, the applicable standard for WLAD actions under RCW 49.60.180 for reasonable accommodation claims seemed clear, requiring that (1) the plaintiff had a sensory, mental, or physical abnormality; and (2) that the abnormality "had a substantially limiting effect upon the individuals ability to perform his or her job." Hill, 144 Wash.2d at 192, 23 P.3d 440. What remained unclear, however, is what standard should be applied to disparate treatment claims.

2. Application to McClarty
McClarty fails to satisfy the two-prong test articulated in Pulcino and Hill. As to the first prong, McClarty correctly argues that he presented factual evidence in the form of a doctor's release indicating that he was suffering from bilateral carpal tunnel syndrome, which would constitute a physical abnormality satisfying the first prong.[7]
*909 As to the second prong, McClarty argues that his physician's limitations on digging and jackhammering substantially limited his ability to perform his job sufficiently. But McClarty's own testimony defeats this argument.
McClarty testified in his deposition that (1) his physician limited his digging and jackhammering only to one-third of a day; (2) 99 percent of the trench work had been completed; and (3) neither pulling wire through conduits nor gluing the pipe lengths were a problem for him. McClarty further testified,
[He] could do anything in that realm [of smaller scale jobs] other than the digging more than a third of the workday, the digging or the jackhammering. And [he] was covering up the last ditch, so anything [he] could have done. Anything.
CP at 96.
Totem did not dispute McClarty's testimony. Thus, there was no genuine issue of material fact as to whether there was any substantial ditch digging or jackhammering work left to be performed or whether McClarty's disability limited his ability to perform any other task on the site. We hold, therefore, that the trial courts grant of summary judgment on McClarty's reasonable accommodation claim was proper.

E. Disparate Treatment
The Pulcino Court expressly stated that it was applying the newly articulated standard to only the reasonable accommodation claim. Pulcino, 141 Wash.2d at 640, 9 P.3d 787. Similarly in Hill, the Court addressed only a reasonable accommodation claim. Hill, 144 Wash.2d at 192 n. 19, 23 P.3d 440.
In Roeber v. Dowty Aerospace Yakima, however, Division Three of this court sought to clarify whether the Pulcino test for reasonable accommodation applied to disparate treatment cases. 116 Wash.App. 127, 136-37, 64 P.3d 691, review denied, 150 Wash.2d 1016, 79 P.3d 446 (2003).

1. The standard
Although recognizing that Pulcino had not yet been applied to disparate treatment claims, the Roeber court adopted the Pulcino standard, 116 Wash.App. at 136-37, 64 P.3d 691,[8] seizing on a portion of the following footnote from Hill:
There is no principled reason why it should be fundamentally harder to establish prima facie cases of disability discrimination under RCW 49.60.180 than prima facie cases of any other form of discrimination made unlawful by that same statute. However, we lack an opportunity here to rule on whether the Pulcino definition should be used to evaluate prima facie cases in all disability discrimination cases.
Hill, 144 Wash.2d at 192 n. 19, 23 P.3d 440. Based on Hill, the Roeber court applied the Pulcino test to a disparate treatment claim, finding it to be "consisten[t] with Washington's broad application of the discrimination laws." Roeber, 116 Wash.App. at 136, 64 P.3d 691.
We respectfully decline to follow Roeber because in our view, applying Pulcino to disparate treatment claims will undermine the WLAD. The Hill Court identified the test that an employee must satisfy to prevail on a disparate treatment claim: The first prong would require an employee to produce evidence that he or she "had a sensory, mental, or physical abnormality that substantially limited her ability to do the job." Hill, 144 Wash.2d at 193-94 n. 20, 23 P.3d 440 (emphasis added). In our view, this test works appropriately for reasonable accommodation claims but not for disparate treatment claims. Requiring an employee to demonstrate that her disability substantially interfered with job performance in a reasonable accommodation claim is logical *910 because without the limitation there would be no need for any accommodation. Once the employee demonstrates substantial limitation, then the McDonnell Douglas burden-shifting scheme commences, requiring the employer to show a legitimate reason for its failure to accommodate; then, the burden shifts to the employee to prove that this reason is merely a pretext for discrimination.
But an employee claiming disparate treatment is not asking the employer to take any remedial steps on his behalf. Rather, the employee asks only that the employer not terminate him for discriminatory reasons. Logically then, under a disparate treatment theory, the employee should not have to show that his condition substantially limited his ability to perform his job because he is not requesting special treatment based on any limitation. On the contrary, the employee is asking only to be treated like all other employees.
Yet under McDonnell Douglas, when an employee does not show a substantial limitation due to his condition, he fails to make his prima facie case, and the employer is entitled to "prompt judgment as a matter of law." Hill, 144 Wash.2d at 181, 23 P.3d 440. So where the employee is merely seeking equal treatment rather than reasonable accommodation  as is the case here  the burden would never shift to the employer, who would then always prevail as a matter of law without having to produce a legitimate, nondiscriminatory justification for the adverse employment action. Applying Pulcino to disparate treatment claims would have serious, adverse legal impacts on employees filing disparate treatment claims under the WLAD, which the Legislature did not intend.
Totem argues that a medical condition is a disability only if it affects the employee's ability to do the job. We disagree. This argument ignores discrimination based on the mere status of having a particular medical condition.[9]
Instead, we follow the Legislature's mandate that WLAD provisions "shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020. Because the rationales of Pulcino and Hill do not apply reasonably to disparate treatment claims, we decline to follow Division Threes lead in Roeber and we do not extend the Pulcino standard to disparate treatment claims under WLAD.
Our inquiry does not stop here, however, because the problem with the WAC definition still exists  that is, requiring the employee to prove the ultimate fact of discrimination to make his prima facie case. In the absence of specific guidance from our Supreme Court analyzing the impact of applying the Pulcino test to disparate treatment claims, we will apply the WAC definition of disability, however presently unworkable it may be.

2. Application to McClarty
Based on the above analysis, to succeed on a disparate treatment claim, McClarty must be able to show that he had a sensory, mental, or physical disability that is an abnormality, which was the reason for his discharge by Totem. WAC 162-22-020(2)(c); Phillips, 111 Wash.2d at 906-07, 766 P.2d 1099. Whether there was the "presence" of a disability and whether that condition was the reason for McCartys discharge are questions of fact for the jury. Phillips, 111 Wash.2d at 909, 766 P.2d 1099.
WAC 162-22-020(2) provides:
"The presence of a sensory, mental, or physical disability" includes, but is not limited to, circumstances where a sensory, mental, or physical condition:
(a) Is medically cognizable or diagnosable;
(b) Exists as a record or history;
(c) Is perceived to exist whether or not it exists in fact.
Proving a disability requires expert medical testimony, medical documentation, and evidence of the employer's state of mind as to whether the employer perceives the existence of a disability. Phillips, 111 Wash.2d at 909-10, 766 P.2d 1099, WAC 162-22-020(2)(a)-(c).[10] *911 To prove that the disability was the reason for the discharge requires "documentation of the employer, testimony regarding the dismissal, and other relevant facts." Phillips, 111 Wash.2d at 909, 766 P.2d 1099.
We hold that the trial courts grant of summary judgment on McClarty's disparate treatment claim was erroneous for two reasons. First, the trial court based the grant of summary judgment on misapplication of the Pulcino reasonable accommodation test to McClarty's disparate treatment claim. Second, determination of disability under the WAC definition is generally a matter for the fact finder, inappropriate for summary judgment.

IV. ATTORNEY FEES
Lastly, McClarty contends that he is entitled to attorney fees under RAP 18.1, which requires a party to request statutory attorney fees in its brief. McClarty cites RCW 49.60.030, which allows a party to recover reasonable attorney fees incurred during the appeal of claims under the WLAD. The prevailing party can recover costs incurred on appeal, including but not limited to, reasonable attorney fees. RAP 14.2; RAP 14.3.
The question here is whether McClarty is a "prevailing party" for purposes of RAP 14.2 if he succeeds in part on appeal but has not yet prevailed on the merits below. The courts are split on whether to award attorney fees immediately after the appeal or to wait until after a trial on the merits.[11] In the absence of a statutory provision allowing the court to designate the prevailing party, the majority of the cases hold that costs and fees should not be awarded until the prevailing party is determined by a trial on the merits. Therefore, we defer any award of attorney fees to McClarty until the conclusion of a trial on the merits and leave it for the trial court to determine, if McClarty prevails, the amount due both at trial and on appeal.

CONCLUSION
We affirm the grant of summary judgment on the reasonable accommodation claim. We reverse the grant of summary judgment on the disparate treatment claim, remand for further proceedings, and defer the issue of attorney fees until the ultimate prevailing party is determined below.
We concur: SEINFELD and HOUGHTON, JJ.
NOTES
[1] Pulcino v. Fed. Express Corp., 141 Wash.2d 629, 9 P.3d 787 (2000).
[2] RAP 9.12 reads:

On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. Documents or other evidence called to the attention of the trial court but not designated in the order shall be made a part of the record by supplemental order of the trial court or by stipulation of counsel.
[3] Totem apparently surmised that McClarty had raised a reasonable accommodation claim because at oral argument it noted that McClarty had not contested that his "accommodation claim" should be dismissed.
[4] The terms "disability" and "handicap" are used interchangeably throughout the cases. We retain the term "handicap" where it appears in original documents.
[5] The Human Rights Commission was originally called the Board Against Discrimination.
[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[7] Totem points out that the United States Supreme Court recently determined that, under the Americans with Disabilities Act, carpal tunnel syndrome, as a matter of law, is not a disability that substantially limits an employee's major life activity of working, citing Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The Pulcino test contemplates only those activities that interfere with the employee's job performance, whereas the Americans with Disabilities Act considers physical impairments in the context of a person's major life activities, not just work. 42 U.S.C. § 12102(2)(A). Thus, it is easier to establish substantial limitation under the WLAD than under the ADA.
[8] McClarty argues that because Roeber is a Division Three case, this Court is neither bound by the decision nor is the holding persuasive, citing Eriksen v. Mobay Corp., 110 Wash.App. 332, 346, 41 P.3d 488 (2002). Although McClarty is correct that the case is not binding on this Court, he is incorrect in arguing that it is not persuasive. Eriksen, states that a non-binding case can still be persuasive, and, if its reasoning is sound, may be applied to the case at bar. Eriksen, 110 Wash.App. at 346-47, 41 P.3d 488.
[9] All of the other protected classes under RCW 49.60.010 are classifications based on status (race, creed, color, national origin, families with children, sex, marital status, and age), and the effect of the status on employees ability to perform the job is not a factor.
[10] Phillips cites WAC 162-22-040 for this proposition. 111 Wash.2d at 909-10, 766 P.2d 1099. WAC 162-22-040 was repealed in 1999, but the identical language, albeit renumbered, appears in WAC 162-22-020.
[11] Cf. Hinman v. Yakima Sch. Dist., 69 Wash. App. 445, 452-53, 850 P.2d 536 (1993) (delaying award of fees until trial on the merits to determine prevailing party), review denied, 125 Wash.2d 1010, 889 P.2d 498 (1994); MB Constr. Co. v. O'Brien Commerce Ctr. Assoc., 63 Wash. App. 151, 159, 816 P.2d 1274 (1991); McGovern v. Smith, 59 Wash.App. 721, 736, 801 P.2d 250 (1990) (awarding fees for success on question of law and delaying fees on question of fact until after trial on the merits) with Gerimonte v. Case, 42 Wash.App. 611, 616, 712 P.2d 876, (awarding fees for prevailing on appeal when statute allowed court to designate prevailing party for purposes of award), appeal dismissed (1986).