[No. 17439-5-III.   Division Three.   September 14, 1999.]
SHELLIE MACSUGA, *Appellant*, v. SPOKANE COUNTY, *Respondent*.

---

[46]*Gingrich v. Unigard Sec. Ins. Co.*, 57 Wn. App. 424, 433, 788 P.2d 1096 (1990).

436

*Michelle K. Wolkey* of *Underwood, Campbell, Brock & Cerutti*, for appellant.

*Amy C. Clemmons* of *Evans, Craven & Lackie, P.S.*, for respondent.

Sweeney, J. — The primary question presented in this disability discrimination case is whether an employer's failure to follow Equal Employment Opportunity Commission (EEOC) interpretive guidelines to the federal Americans with Disabilities Act (ADA) is a *per se* violation of Washington's law against discrimination. It is not. And we therefore affirm the jury verdict for the employer.

## FACTS

Shellie MacSuga worked as a paralegal in the Spokane County Public Defender's Office. In that capacity, she conducts interviews with clients in jail, and makes handwritten notes which the lawyers then use during criminal proceedings. Jail interviews make up about 75 to 85 percent of the job.

In April 1995, Ms. MacSuga injured her neck and right shoulder in an off-duty car accident. Prolonged handwriting aggravated the injury. Her doctor ordered her writing limited to no more than 30 minutes at a stretch for a total of no more than four hours a day.

When the other paralegal in her section left for six weeks' medical leave, his duties were not covered. Ms. MacSuga conducted jail interviews for six hours a day. Within a few days, she aggravated her injury. Her doctor further restricted her to one jail interview per day, gradually increasing to three per day.

Ms. MacSuga asked for a disability accommodation to reduce the volume of handwriting.

Various accommodations, to get around her handwriting

requirement, were discussed and rejected as impracticable. For example, tape-recording the notes was rejected because of concern that tape recordings were subject to discovery by the State, while handwritten notes were protected as lawyer work product. And busy public defenders did not have time to listen to tapes anyway. Typing was rejected because the employer believed Ms. MacSuga's injury prevented her from typing. Ms. MacSuga never said she could type. Neither adequate secretarial help nor sufficient funds to send the work out were available to allow Ms. MacSuga to dictate the notes.

Ms. MacSuga suggested that volunteers perform the interviews, but none were available. Moreover, volunteers were students, available only on an unpredictable part-time basis and therefore could not fill a full-time position. Ms. MacSuga also asked to be reassigned or rotated with other paralegals in the office. However, since all the paralegals do primarily jail interviews, the County contended that, if the other paralegals did all the jail interviews, there was not enough other work for Ms. MacSuga. The interview notes could not be taken by computer because the operating system was not PC-based, but relied on dumb terminals. And the necessary facilities were not available in the jail interview rooms. Lack of facilities, budget limitations and the perceived typing problem combined to preclude consideration of a laptop computer.

At trial, Ms. MacSuga's expert suggested voice-activated software. The public defender testified this was financially impossible and beyond the limitations of the computer operating system. IBM's voice system was also still in the developmental stage.

Ms. MacSuga conceded that her inability to write precluded her from doing the jail interviews. And the public defender contended that the jail interviews were an essential job function.

Early in May 1995, the public defender announced that an existing policy against unpaid leave would be strictly enforced. Ms. MacSuga was informed that the no-leave-

without-pay policy would be enforced starting in June. She had previously taken extensive unpaid leaves. And she conceded that her pre-injury absences were excessive. She was, nevertheless, granted six months' unpaid medical leave starting June 9, 1995, to preserve her medical benefits.

She also applied for benefits under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. She requested two hours' leave each week for therapy. She was declared ineligible for FMLA, however, because she had worked only 1,224 hours during the previous 12 months, instead of the 1,250 hours required by the Act.[1] Ms. MacSuga testified that she had worked regular unreported overtime hours. Other witnesses refuted this.

She was told to either resign or be laid off after her medical leave ended on November 24. The Public Defender wanted the jail interviews done. Because of strict hiring restrictions, the only way to do this was to vacate Ms. Mac-Suga's position and rehire. In December, the open paralegal position was posted. Ms. MacSuga applied for the position, but the office ignored her application.

She sued for disability discrimination, RCW 49.60. In six separate instructions, the court explained reasonable accommodation. Together, these instructions told the jury that Ms. MacSuga had the burden of proving that she could perform the essential functions of the job with or without reasonable accommodation; that reasonable accommodation could include a reasonable adjustment in job duties, work schedules, scope of work, job setting or conditions of employment; that the employer had the duty to inquire into the nature and extent of her disability and to take positive steps to accommodate the limitations; and the factors the employer may consider in determining whether a given accommodation is reasonable. The court refused to give Ms. MacSuga's proposed jury instruction to the effect that an employer is per se liable for failing to reasonably accom-

[1] 29 C.F.R. § 825.110.

modate if it does not consult outside sources of information—specifically the employee's doctor and the EEOC technical assistance help line.

The jury returned a verdict for the County. Ms. MacSuga assigns error to the jury instruction on reasonable accommodation and the burden of proof to establish FMLA eligibility.

## DISCUSSION

We review jury instructions de novo. *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995). Whether to give a particular jury instruction is within the sound discretion of the trial court. *Stiley v. Block*, 130 Wn.2d 486, 498, 925 P.2d 194 (1996); *Reninger v. Department of Corrections*, 79 Wn. App. 623, 639, 901 P.2d 325 (1995), *aff'd*, 134 Wn.2d 437, 951 P.2d 782 (1998). The instructions are sufficient if, when read in their entirety, they are not misleading, permit the party to argue its theory of the case, and properly inform the jury of the applicable law. *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 662, 935 P.2d 555 (1997); *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 165, 876 P.2d 435 (1994).

The court need not include specific language, so long as the instructions as a whole correctly state the law. *Capers v. Bon Marche*, 91 Wn. App. 138, 143, 955 P.2d 822 (1998). And jury instructions are to be read in their entirety. *Dean v. Municipality of Metro. Seattle*, 104 Wn.2d 627, 634, 708 P.2d 393 (1985). We will reverse only if the defective instruction was prejudicial. *Hue*, 127 Wn.2d at 92. Prejudice means the outcome of the trial was affected. *Stiley*, 130 Wn.2d at 499.

### I. Reasonable Accommodation.

Ms. MacSuga argues that an employer has the affirmative obligation to consult outside sources of information about all possible accommodations unless it can come up with an effective accommodation on its own. She relies on

Interpretive Guidance on Title I of the Americans with Disabilities Act (ADA), 29 C.F.R. pt. 1630, app., for this position. Specifically, she contends that the County was obliged to contact her doctor and the EEOC help line for technical assistance in contriving an accommodation. The trial court refused to so instruct. Ms. MacSuga contends, therefore, that the jury was not properly instructed on the steps the employer must take to discover every possible accommodation. Ms. MacSuga is mistaken. Neither federal nor Washington law requires an employer to contact the employee's doctor or consult federal agencies to determine the availability of reasonable accommodations.

■ The Washington statutes or regulations at issue here have the same purpose as their federal counterparts. We therefore look to federal cases for guidance. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 376, 610 P.2d 857, 621 P.2d 1293 (1980).

■■ Under federal law, the plaintiff employee has the burden of showing that a specific reasonable accommodation was available to the employer at the time the employee's physical limitation became known. *Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 749 (9th Cir. 1998). An accommodation is reasonable only if its cost is not clearly disproportionate. *Stone v. City of Mount Vernon*, 118 F.3d 92, 98 (2d Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). The burden is on the employee to show this. *Id.* The employee first suggests a plausible accommodation, one where the costs do not exceed its benefits. The burden then shifts to the employer to show that the proposed solution is not feasible. *Id.*

■ Reassignment is one method of accommodation. 29 C.F.R. § 1630.2(o)(2)(ii). But an employer is neither required to reassign an employee to a position that is already occupied nor to create a new position. *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995). Neither is the employer required to alter the fundamental nature of the job or eliminate or reassign essential job functions. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 195 (3d Cir. 1999);

*White*, 45 F.3d at 362 n.7 (citing 29 C.F.R. pt. 1630, app. § 1630.2(o)); *Barnett*, 157 F.3d at 751. If the only successful accommodation is to eliminate essential functions, then the employee cannot perform the essential functions of the job with reasonable accommodation. *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997), *reh'g denied*, 137 F.3d 1353 (5th Cir. 1998).

The EEOC has promulgated guidelines to interpret the ADA. 29 C.F.R. pt. 1630, app. But the EEOC guidelines are recommendations only—not requirements. *White*, 45 F.3d at 363. An employer is liable under the ADA only if a reasonable accommodation was available, and the employer did not act upon it. *Barnett*, 157 F.3d at 752 (no per se employer liability for failing to initiate discussions with employee if no reasonable accommodation available).

The guidelines and federal decisions say no more than that the employer must make reasonable efforts to find an accommodation. The best way to determine a reasonable accommodation is through a flexible, interactive process between the employer and the employee. *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) (quoting 29 C.F.R. pt. 1630, app.). Although it is strongly recommended, there is no absolute requirement for discussions between employer and employee. *White*, 45 F.3d at 363. And both employer and employee are equally responsible for successfully identifying a reasonable accommodation. *Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996); *Beck*, 75 F.3d at 1135.

Ms. MacSuga relies on *Bultemeyer* for the proposition that the failure to consult the employee's doctor is a per se violation. In *Bultemeyer*, the employer refused to consult and cooperate with the employee. And although it did preclude summary judgment for the employer, the court held that it was not a per se violation. The statutory requirements are satisfied by good faith discussions between the employer and employee. *Bultemeyer*, 100 F.3d at 1285.

■ Washington law is consistent with these federal

cases. Reasonable accommodation anticipates an exchange between the employer and employee. Each is expected to seek and share information to match the employee's capabilities with available positions. *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09, 899 P.2d 1265 (1995).

The duty of accommodation includes evaluation of potential positions in relation to the employee's disability. *Doe v. Boeing Co.*, 121 Wn.2d 8, 20, 846 P.2d 531 (1993). The employer must determine whether open positions could accommodate the employee's disability and inform the employee. *Curtis v. Security Bank*, 69 Wn. App. 12, 19, 847 P.2d 507, *review denied*, 121 Wn.2d 1031 (1993).

■ The law against discrimination prohibits discharging a person merely because she is handicapped. RCW 49.60.180(2). But, if the handicap prevents the employee from performing the essential functions of the job, it is not discrimination to replace her. *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 118-19, 720 P.2d 793 (1986). If an opening exists within the employer's business for which the handicapped employee is qualified, RCW 49.60.180 requires that the employer take affirmative steps to help the employee fill the position. *Dean*, 104 Wn.2d at 639. But an employer has no duty to create a job for a handicapped employee or to hire her in preference to a more qualified employee. *Id.* at 634. And it is not discrimination to deny a job to a handicapped person who is unqualified. *Clarke*, 106 Wn.2d at 121; *Dean*, 104 Wn.2d at 638.

Here, there were frequent and exhaustive exchanges between Ms. MacSuga and her supervisors. The County considered a number of accommodations. None worked.

Ms. MacSuga's jury was properly instructed on reasonable accommodation.

II. FMLA Benefits.

The FMLA entitles an eligible employee suffering from a serious health condition to take a leave of absence of up to 12 weeks. The employer must offer the employee the same or an equivalent job at the end of the leave. 29 C.F.R.

§ 825.214(a). In order to qualify under FMLA, the employee must have worked for the employer for 1,250 hours during the preceding 12 months. 29 C.F.R. § 825.110.

■■■ Ms. MacSuga assigns error to instruction 23, which informs the jury that, in calculating the total hours required to qualify for benefits under the FMLA, "[a]ll hours actually worked for the benefit of the employer and with the employer's consent, authorization or knowledge shall be considered in calculating the number of hours worked." This is a correct statement of the law. The minimum hours worked for FMLA are calculated using the principles established under the Fair Labor Standards Act. 29 C.F.R. § 825.110(c); *Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767, 772 (N.D. Ga. 1996). The employer must know about and consent to the overtime hours. 29 U.S.C. § 2611(2)(C); 29 C.F.R § 785.11; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

Ms. MacSuga wanted the court to instruct the jury that, if the employer does not maintain a record of the hours worked by an employee, the employer has the burden of showing that the employee has not worked the requisite hours or the employee is deemed to have worked the number of hours claimed. Ms. MacSuga misreads the law.

■■■ The language of her proposed instruction is derived from 29 C.F.R. at §§ 825.110(c) and 785.11.[2] These sections require the employer to keep accurate records of the hours worked, including overtime. If the employer fails to keep records, the burden is on the employer to prove the claimed hours were not worked. However, the employee must first show by reasonable inference the number of hours worked to shift the burden onto the employer to prove otherwise. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). The worker can shift the burden of proof to the employer by proving some

---

[2]If the employer does not keep adequate records, the employee is deemed to have worked the hours claimed unless the employer can prove otherwise. 29 C.F.R. § 825.110(c). Overtime hours include work time suffered or permitted by the employer, even if not requested. 29 C.F.R. § 785.11.

quantum of work actually performed. The employer must then rebut the inference that the employee worked the number of hours required to accomplish this amount of work. *Id.*

The County records hours worked by crediting the standard workday less any hours the employee reports were not worked. Ms. MacSuga testified she worked regular unpaid and unreported overtime hours. This is not enough to shift the burden to the County to document that she did not work the hours she claims. Ms. MacSuga testified that she often came in early and worked through lunch. The County rebutted this with the testimony of several coworkers. The County, although using rough calculations, estimated the hours as generously as possible, but still could not come up with enough.

There was abundant testimony that the County strictly enforced its no-overtime policy and went to great lengths to make sure every employee understood it. Further, numerous witnesses disputed Ms. MacSuga's testimony that she worked extra hours.

The court instructed the jury that extra work hours acquiesced to by the employer counted toward the FMLA total. The jury was adequately instructed.

We find no error here and therefore affirm the judgment.

SCHULTHEIS, C.J., and KURTZ, J., concur.

Review denied at 140 Wn.2d 1008 (2000).