[No. 20065-5-III. Division Three. May 2, 2002.]

ZANA GRIFFITH, *Appellant*, v. BOISE CASCADE, INC., *Respondent*.

*Dan F. Hultgrenn* and *Timothy G. Klashke* (of *Kuffel Hultgrenn Klashke & Shea, L.L.P.*), for appellant.

*Tom Scribner* and *Dean J. Zona* (of *Minnick-Hayner*) (*Tracy R. O'Neale*, of counsel), for respondent.

SWEENEY, J. — In Washington, an employer must reasonably accommodate an employee's disability. That accommodation may include assistance, which allows the employee to maintain her current position. Or it may take the form of a new and different job—one compatible with her disability. Here, Boise Cascade, Inc., after repeated attempts to accommodate Zana Griffith at her current position, offered her a position compatible with her physical limitations. She rejected that position because it was inconsistent with her

career goals. The trial court summarily dismissed her claim. We affirm.

## FACTS

Boise Cascade hired Zana Griffith in July 1989. Ms. Griffith was hired as an extraboard. That is an entry-level job. Extraboards fill temporary vacancies in a given department and perform various duties, including clean up, waste unloading, and equipment operation. The job requires physical labor.

Boise Cascade assigned Ms. Griffith to the shipping department. She performed extraboard duties and was sometimes a roll wrap helper. This last position required continuous standing, sometimes for an entire shift.

Ms. Griffith belonged to the Association of Western Pulp and Paper Workers, Wallula Local No. 69 (Union). The collective bargaining agreement required seniority for reassignment.

Ms. Griffith contracted chicken pox in July 1994. Her doctor first believed that she would be able to return to work after 6 to 10 days. But Ms. Griffith began having trouble sleeping and suffered from muscle aches and weakness. She could not vacuum, walk short distances, do basic household chores, or even hold a magazine to read.

Ms. Griffith was diagnosed with polymyositis the following November. Polymyositis is an autoimmune disorder that results in diffused muscle pain and weakness. She left work. She was not able to return to work during the remainder of 1994.

In March 1995, Ms. Griffith's doctor released her to work with restrictions. The restrictions limited standing or walking to 40 minutes, and lifting up to 15 pounds only occasionally. And her doctor recommended that Ms. Griffith perform deskwork or other work that would allow her to rest her muscles.

Boise Cascade determined that Ms. Griffith could not perform the essential functions of the extraboard job, with

or without accommodations. But there were no other compatible positions for which Ms. Griffith had the requisite seniority. So she remained off work.

Her restrictions were modified in July 1995. The new restrictions limited her to (1) lifting no more than 25 pounds; (2) resting for 10 minutes after 60 minutes of standing, walking, bending, or pushing; and (3) operating the roll wrap machine "as tolerated." Clerk's Papers (CP) at 141. Her doctor expected her to recover completely in 3 to 12 months.

Ms. Griffith met with Boise Cascade on August 22, 1995. They agreed to a physical capacity evaluation. The evaluation confirmed that Ms. Griffith could perform some but not all of the essential functions of an extraboard in the shipping department. The evaluation recommended the "least amount of prolonged physical stress" for Ms. Griffith. CP at 147. But no compatible positions were open; at least none that Ms. Griffith had enough seniority under her Union agreement to apply for.

Ms. Griffith filed a discrimination complaint with the Washington Human Rights Commission. Boise Cascade responded that it was currently accommodating Ms. Griffith. And its policy was to first attempt accommodation in the employee's current position and next, if necessary, find a compatible open position. Ms. Griffith's complaint was (apparently) dismissed.

Ms. Griffith returned to work in October 1995. She began working four-hour shifts and gradually worked her way up to eight-hour shifts. During this time, Boise Cascade assigned an additional extraboard from another shift to work with Ms. Griffith's shift. This allowed Ms. Griffith to work at her own pace and take breaks when needed.

In January 1996, a shipping utility position became available. Ms. Griffith applied for the position. But her doctor concluded that she could not perform the essential functions of that position. Ms. Griffith believed, however, that she could perform the job with accommodations.

Boise Cascade refused to offer her the position because she could not perform the essential functions of the job. It offered her instead a rewinder position. The rewinder position required much less physical activity, allowed Ms. Griffith to remain seated, and allowed her to work at her own pace. Ms. Griffith rejected the rewinder position because it was "inconsistent with her future long-term career goals" at Boise Cascade. Appellant's Br. at 10.

Boise Cascade received additional workplace restrictions from Ms. Griffith's obstetrician in March 1996. Because Ms. Griffith was pregnant, she could not work in positions that required "prolonged standing." CP at 165.

On April 2, 1996, Boise Cascade told Ms. Griffith that it would no longer accommodate her condition in the extraboard position, which it had been attempting since October 1995. Boise Cascade finally terminated Ms. Griffith on April 7, 1998. The collective bargaining agreement permitted termination after two years of leave for a physical disability.

## PROCEDURE

Ms. Griffith sued Boise Cascade for intentional infliction of emotional distress, handicap discrimination in violation of Washington law (chapter 49.60 RCW), violation of public policy, and retaliatory discharge.

Boise Cascade moved for summary judgment dismissal of all of Ms. Griffith's claims. The parties stipulated to dismissal of the intentional infliction of emotional distress claim at the summary judgment hearing. The trial court later granted Boise Cascade's motion for summary judgment and dismissed Ms. Griffith's remaining claims.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo. We ask whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment

as a matter of law. We consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000); *Lindblad v. Boeing Co.*, 108 Wn. App. 198, 203, 31 P.3d 1 (2001).

## REASONABLE ACCOMMODATION

■ Ms. Griffith argues essentially that Boise Cascade failed to show that accommodating her posed an undue hardship. But she is a step ahead of the process. She must first show that Boise Cascade failed to accommodate her.

Washington's Law Against Discrimination (hereafter Act) makes it unlawful for an employer to discriminate against an employee based on the employee's sensory, mental, or physical disability. RCW 49.60.180(2); *Pulcino*, 141 Wn.2d at 639. We liberally construe the Act to achieve its purpose of "eliminating and preventing discrimination." *Curtis v. Sec. Bank of Wash.*, 69 Wn. App. 12, 15, 847 P.2d 507 (1993); RCW 49.60.020, .010.

An employer must reasonably accommodate an employee's disability unless the employer can show that such accommodation would place an undue hardship on the employer's business. *Pulcino*, 141 Wn.2d at 639-40. An accommodation claim raises two issues: (1) whether the employee was disabled as defined under the Act and (2) whether the employer reasonably accommodated the employee's disability. *Pulcino*, 141 Wn.2d at 640; *Lindblad*, 108 Wn. App. at 203.

Ms. Griffith suffers from a physical disability. The question then is whether Boise Cascade reasonably accommodated her disability. And only if it *did not* must we address the question of whether accommodation posed an undue hardship.

■ To accommodate, the employer must affirmatively take steps to help the disabled employee continue working—at the existing position or through attempts to find a position compatible with her limitations. *Doe v. Boeing Co.*,

121 Wn.2d 8, 18, 846 P.2d 531 (1993); *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 120, 720 P.2d 793 (1986).

Ms. Griffith directs our attention to her request to remain at her old position with assistance from other employees when needed. Boise Cascade focuses on what it did—found her a position compatible with her disabilities.

An employee is not entitled to the specific accommodation requested:

> The correct focus is whether the accommodation that [the employer] actually provided was reasonable. . . .
>
> For us to hold otherwise would contravene clear law established by Washington courts that, "[the antidiscrimination] Act does not require an employer to offer the employee the *precise accommodation he or she requests*." If, rather than defending the reasonableness of the accommodation it chose, [the employer] were required to prove that [the employee's] proposed accommodation would have imposed an undue burden, [the employee] would effectively be choosing the accommodation, not [the employer].

*Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995) (emphasis added) (citations omitted).

■ An employer need only show that an accommodation imposed an undue burden if it makes no accommodation. *Sharpe*, 66 F.3d at 1050. But where an employer makes an accommodation, "[i]f that accommodation was reasonable, then [the employer] satisfied its legal obligation, *and the inquiry is over*." *Id*. (emphasis added).

■ *Sharpe* sets out the law in Washington. *Dedman v. Pers. Appeals Bd.*, 98 Wn. App. 471, 485, 989 P.2d 1214 (1999). Reasonable accommodation means:

> 1) to determine the extent of [the employee's] disability and how it could be accommodated, 2) to take affirmative steps to inform [the employee] of job opportunities within the Company, and 3) to consider [the employee] for and move him [or her] into openings for which he [or she] was qualified.

*Sharpe*, 66 F.3d at 1050-51.

■ Here, Boise Cascade did all that was required. It offered Ms. Griffith a position compatible with her physical limitations. Reassignment is a reasonable accommodation. *Pulcino*, 141 Wn.2d at 643; *Davis v. Microsoft Corp.*, 109 Wn. App. 884, 892, 37 P.3d 333 (2002); *MacSuga v. Spokane County*, 97 Wn. App. 435, 442, 983 P.2d 1167 (1999).

Boise Cascade identified Ms. Griffith's limitations, found a position that matched her restrictions, and ultimately offered her a position that matched her limitations. In sum, Boise Cascade reasonably accommodated Ms. Griffith. *See Sharpe*, 66 F.3d at 1050-51; *Dedman*, 98 Wn. App. at 484. Ms. Griffith was not entitled to the precise accommodation she requested. *Pulcino*, 141 Wn.2d at 643; *Doe*, 121 Wn.2d at 20; *Dedman*, 98 Wn. App. at 485. So "the inquiry is over." *Sharpe*, 66 F.3d at 1050. The trial court then appropriately dismissed her disability discrimination claim.

■ Moreover, Ms. Griffith's proposed accommodation was unreasonable as a matter of law. An employer need not remove or modify the essential functions of a position to accommodate an employee. *Pulcino*, 141 Wn.2d at 644; *Dedman*, 98 Wn. App. at 485; *MacSuga*, 97 Wn. App. at 442.

Ms. Griffith could not perform the essential functions of the labor-intensive extraboard position. *See* CP at 56, 67-69, 139, 141, 143-47, 180-82, 209-10, 215. Her request to stay in that position (with assistance from other employees) was essentially then a request that Boise Cascade eliminate some of the essential functions of the position. Her requested accommodation was then unreasonable. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727-28 (6th Cir. 2000); *Tardie v. Rehab. Hosp. of R.I.*, 168 F.3d 538, 544 (1st Cir. 1999).

PUBLIC POLICY AND RETALIATORY DISCHARGE

Finally, Ms. Griffith assigns error to the court's dismissal of her claims for wrongful discharge in violation of public policy and for retaliatory discharge. But each of these assignments is predicated upon Ms. Griffith's claim that

Boise Cascade violated the law against discrimination by not providing reasonable accommodation for her disability. We reject her disability claim and these claims then necessarily fail as well.

Ms. Griffith argues that Boise Cascade violated public policy because it violated the Law Against Discrimination. Her argument is that the Act demonstrates Washington's public policy against discrimination. And while it may, Boise Cascade did not violate the Act. There is then no violation of any public policy.

A retaliatory discharge claim under RCW 49.60.210 (for whistleblowing) requires that the employee had opposed a practice by the employer "forbidden by this chapter." RCW 49.60.210(1). Again, Boise Cascade did not violate the Act because it reasonably accommodated Ms. Griffith. Accordingly, there was no forbidden practice to blow the whistle on.

The trial court properly dismissed Ms. Griffith's claims for violation of public policy and retaliatory discharge.

## BOISE CASCADE'S COST BILL

The trial court correctly granted Boise Cascade's motion for summary judgment. Accordingly, judgment on Boise Cascade's cost bill was likewise correct. RCW 4.84.030.

## ATTORNEY FEES ON APPEAL

■ An employee is entitled to attorney fees "only if [his or] her claim under the Act is meritorious." *Doe*, 121 Wn.2d at 22; RCW 49.60.030(2). Ms. Griffith was not, and is not, the prevailing party. Her request is then denied.

The judgment of the trial court is affirmed.

BROWN, C.J., and KURTZ, J., concur.