**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| TANYA NOZAWA, | No.  49091-9-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. – Tanya Nozawa appeals the trial court order granting summary judgment to her former employer the Department of Corrections (DOC) and dismissing her failure to accommodate, disparate treatment based on disability, and whistleblower retaliation claims.[1]  She argues that summary judgment was not appropriate because there were issues of material fact as to these claims and none of her claims were barred by the statute of limitations.  We hold that the trial court did not err when it found that Nozawa's claims based on DOC actions occurring before April 28, 2011, were barred by the statute of limitations.  As to her remaining claims, we further hold that Nozawa fails to establish questions of fact as to whether (1) the DOC provided a

---

[1] Although Nozawa at one point asserts that there were material issues of fact as to all of the claims she raised in her complaint, her arguments relate only to these three claims.  Accordingly, we address only those claims for which Nozawa has provided argument.  *See* RAP 10.3(a)(6).

reasonable accommodation for her nonwork-related injury and (2) there was an adverse employment action supporting her disparate treatment and retaliation claims. Accordingly, we affirm.

## FACTS[2]

### I. Background

#### A. Work History and Whistleblower Complaint

The DOC originally hired Nozawa in 1988 as a corrections officer at Clallam Bay Correctional Center. In 2002, the DOC promoted her to the position of a community involvement program coordinator (CIPC) at Pine Lodge Corrections Center. After that position was abolished in 2003, Nozawa took another CIPC position at Airway Heights Corrections Center.

In January 2004, the DOC promoted Nozawa to one of two Graphic Designer 1 positions with the DOC's Communications and Outreach Office located in the DOC headquarters. In 2008, Nozawa began reporting directly to Belinda Stewart.[3]

Starting in 2009, the DOC was subject to unprecedented budget cuts. In July 2010, the DOC Secretary Eldon Vail worked with executive staff to develop a proposal to cut staff in each section of the DOC. Ultimately, Nozawa's Graphic Designer 1 position was eliminated. Although this decision was made following considerable discussion by executive staff, Nozawa believed that her position was targeted by Stewart after Nozawa refused to "work under the table . . . and to

---

[2] Because we are reviewing a decision on a summary judgment motion, we present the facts in the light most favorable to the nonmoving party, Nozawa. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

[3] Stewart in turn reported to Scott Blonien, the Assistant Secretary for Government, Community Relations, and Regulatory Compliance.

join [Stewart's] nonprofit organizations." Clerk's Papers (CP) at 108. Nozawa grieved the abolishment of her position, but her grievance was unsuccessful. In lieu of her abolished position, Nozawa was offered and accepted a position at Cedar Creek Correctional Facility Center with a starting date of December 1, 2010.

Meanwhile, in November or December of 2010, Nozawa filed a whistleblower complaint against Stewart. The DOC learned about the whistleblower report on or around February 11, 2011.[4]

B. INJURY, INITIAL ACCOMMODATION ATTEMPTS, AND APRIL 19, 2011 MEETING

Nozawa began work at Cedar Creek on December 1, 2010 in another CIPC position. Nozawa's office was located inside the secured facility, and her direct supervisor was Corrections Program Manager Charles Washburn. Washburn, in turn, reported to Superintendent of Cedar Creek Doug Cole.

In late February 2011, Nozawa slipped on ice and injured her ankle in a nonwork-related incident. Her doctor initially advised her to stay off of her ankle completely, and she took paid sick leave from March 1 through March 11.

Meanwhile, in early March, Secretary Eldon Vail was advised of the whistleblower complaint filed against Stewart. On March 4, human resources consultant Susanna Ruiz[5] contacted Nozawa about scheduling a meeting with Superintendent Cole and Washburn. According to

---

[4] Stewart was later disciplined for using state services to conduct business of outside nonprofit organizations.

[5] Ruiz's previous last name was Leoppard. She is referred to by both names in the record, but we use the name Ruiz throughout for clarity.

Nozawa, when she asked what the meeting was about, Superintendent Cole stated that the meeting was "[m]ostly just dialogue about [Cedar Creek], volunteer programs and communications" and that it was "[n]ot a huge worry, [he] was just wanting to talk and had offer [sic] [his] 2 cents worth." CP at 290. This vague answer caused Nozawa to be concerned that the meeting was related to her whistleblower status. The meeting was postponed until April 19.

On Monday, March 14, Nozawa briefly returned to work, but she aggravated her ankle injury and, per her doctor's instructions, was on paid leave from March 15 through April 18. When Nozawa came to work on March 14, Washburn had given her permission to work in the administration building located outside the perimeter of Cedar Creek to accommodate her mobility needs while on crutches. Superintendent Cole, however, withdrew this permission because the location of the administrative building restricted Nozawa's contact with inmates.[6] Nozawa was informed of this decision on March 14.

The next day, Ruiz e-mailed Nozawa "to start the reasonable accommodation process, and to clarify . . . Nozawa's request and expectations." CP at 123. Between March 15 and March 24, Ruiz "received medical information from . . . Nozawa's doctor explaining that her ankle injury restricted her from driving and also from working with offenders." CP at 124. According to Ruiz, the doctor's assessment was based on a review of Nozawa's job description, "including the essential functions of the job." CP at 124.

---

[6] Superintendent Cole considered accessibility to inmates to be an essential function of Nozawa's position because he believed that the job required that she supervise offenders on a daily basis. Nozawa disputes that her job required her to have contact with offenders. Because we resolve this case on other grounds, we do not need to address whether there was a question of material fact related to whether contact with offenders was an essential function of Nozawa's CIPC position at Cedar Creek.

Ruiz e-mailed Nozawa with this information and asked about her plan to return to work or, if she was unable to return to work, about gathering additional information to evaluate a reasonable accommodation. On or about March 29, they spoke on the phone, and Ruiz learned that Nozawa was still restricted from working with offenders.

Nozawa returned to work again on April 19, but she returned to sick leave the next day. The meeting with Superintendent Cole and Washburn took place on April 19.

According to Nozawa, during this meeting, Superintendent Cole told her that he had heard that she or "[h]er civilian friends" had filed a whistleblower report against Stewart and that "he felt [she] had a personal vendetta against [Stewart] and to stop talking about [Stewart]." CP at 98. Superintendent Cole also commented on how much leave Nozawa had taken and how Washburn had to do her job on top of his own. When Nozawa told the superintendent that she had been trying to get back to work but she was not allowed to and that she was glad she had more than 1,000 hours of sick leave, the superintendent commented that he usually denied requests to use annual leave in lieu of sick leave "because he thinks that staff shouldn't abuse their sick leave." CP at 423. Although Nozawa admitted that Superintendent Cole did not say there would be any consequences if she did not change her behavior, she felt that he implied there would be, and she left the meeting feeling threatened and scared.[7]

---

[7] In contrast, Superintendent Cole asserted that he had merely told Nozawa that he had heard she had been "gossiping and bad-mouthing" staff, possibly Stewart, and that he had asked Nozawa to stop doing so because it was "not productive in the workforce." CP at 333-34. The Superintendent denied threating Nozawa.

C. FURTHER ACCOMMODATION ATTEMPTS

On or around April 21, Nozawa provided Ruiz with a note from her physical therapist excusing her from work for two additional weeks. Then, from May 10 through June, Nozawa submitted medical notes recommending "light duty, away from inmates" because she was "unable to run and cut symptom free," which meant that she had been cleared to work as long as she was away from offenders. CP at 145.

On May 31, Ruiz advised Nozawa that the superintendent had denied her "light duty request not to work around offenders in her CIPC" capacity because her position required her "to work with offenders daily." CP at 125, 148. Ruiz explained that because Nozawa could not perform this part of her job, they could look for other temporary reassignment options as an accommodation.[8]

Also in late May, Ruiz offered to place Nozawa in an Office Assistant 3 position in the administrative building. In late June, although Nozawa had informed Ruiz that she wanted to return "to work and stop using [her] leave," Nozawa refused to consider this position because its salary was lower than her CIPC rate. CP at 301-02.

In July, after Nozawa again confirmed that she wanted to seek temporary reassignment, Ruiz started a search for a temporary reassignment as a reasonable accommodation by contacting

---

[8] According to Ruiz and Marcos Rodriguez, the Human Resources Director at the DOC, on-the-job injuries and nonwork-related injuries receive different treatment in respect to returning the injured employee to work. When the employee has a nonwork-related injury, "[a] temporary reassignment to a position requires that the position be vacant and funded" and that the employee seeking reassignment be qualified for the position. CP at 125. This required Ruiz to limit her search to unfilled positions at the time of the search. The position offered also had to be at or below the reassigned employee's current position.

other human resource consultants in the DOC. According to Ruiz, as of July 12, she was still waiting on paperwork from Nozawa that would allow her (Ruiz) to go forward with the reassignment, but Nozawa refused to complete the paperwork. From July 1 to August 4, Ruiz and Nozawa e-mailed back and forth about this paperwork.

On August 4, Ruiz finally had all of the required information and paperwork from Nozawa, and Ruiz began following up on leads that she had received in early July.[9] According to Ruiz, she was unable to find "a temporary reassignment position that was vacant, funded, geographically near Ms. Nozawa, in or close to her pay classification, and for which she met the position qualifications, because none were available." CP at 127. At one point, Ruiz located two potential reassignments, an Office Assistant 2 position in Lacey, and an Office Assistant 3 position at Cedar Creek, that met the DOC's requirements, but Nozawa declined these positions.

Meanwhile, Nozawa had been using her accrued leave. On August 8, Nozawa inquired about shared leave, and Ruiz provided her with the necessary paperwork. After initially being refused shared leave,[10] Nozawa was approved for shared leave on September 22, with a retroactive effective date of September 14. Her shared leave was approved through mid-December. In the documentation supporting her shared leave request, Nozawa's providers stated she could not work at all from September 14 through October 31.

---

[9] An e-mail to Ruiz on July 7 from another person in human resources stated that there was an open Fiscal Technician 2 position as of July 7, 2011. There is nothing in the record clarifying the qualifications or location of this position.

[10] The superintendent initially denied the shared leave request because Nozawa's health care practitioner did not say that her injury was an extraordinary or severe illness, injury, or impairment that he would consider serious, extreme, and/or life threatening. The request was granted after Nozawa corrected this deficiency.

On November 16, Ruiz contacted Nozawa to ask about her condition after receiving a doctor's note saying that Nozawa would "be getting released back to work in November." CP at 188. On November 30, Nozawa advised Ruiz that she might not be able to return to work as a CIPC for a month or so and asked Ruiz to continue to look for a temporary reassignment. Nozawa also said she was updating her resume because the resume she had previously provided "didn't really break down what [she had] worked on." CP at 188.

Ruiz continued to seek qualifying positions. She located a qualifying Office Assistant 3 position in Longview and a record technician position at DOC headquarters in Tumwater. According to Ruiz, Nozawa rejected the Longview position because it was too far away. It was unclear if Nozawa was qualified for the record technician position, and on or around December 14, Nozawa asked Ruiz to hold off exploring that position. Nozawa was approved for additional shared leave on December 14.[11] On January 13, 2012, Nozawa notified the DOC she was resigning effective January 31 because she had accepted a position with another state agency.

## II. PROCEDURE

### A. LAWSUIT AND SUMMARY JUDGMENT MOTION

On June 27, 2014, Nozawa filed a complaint for damages alleging, in part, that the DOC had violated the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, by (1) engaging in disparate treatment on the basis of disability, (2) failing to accommodate her temporary

---

[11] According to Nozawa, at some point she became aware of a Correction Specialist 1 position at Cedar Creek, but her request for an interview was denied. It is not clear when Nozawa discovered or when she asked to be considered for this position. The record provides no additional details about this position's requirements. The only evidence of this position was from Nozawa's deposition testimony.

disability, and (3) engaging in retaliation for her whistleblower complaint.[12]  She filed an amended complaint alleging the same causes of action on July 3, 2014.

The DOC moved for summary judgment.  It argued that any claims relating to acts that occurred before May 4, 2011 were barred by the three-year statute of limitations and that the remaining claims failed as a matter of law because Nozawa failed to establish questions of fact as to the DOC's failure to accommodate[13] or any adverse employment action.

In her response to the summary judgment motion, Nozawa did not address the DOL's statute of limitations argument.  But she argued that there were questions of fact as to her reasonable accommodation, disparate treatment based on disability, and retaliation claims.

Regarding her reasonable accommodation claim, she argued that the only issue was whether a reasonable accommodation was offered.  She asserted that there was a question of fact as to this issue because the DOC offered her only positions that would have resulted in significant pay cuts when there were at least five vacant and funded positions available in July 2011.  To support this assertion, Nozawa included her own deposition testimony and e-mails from her stating that there were open positions[14] that Ruiz did not offer her and an e-mail from another DOC human resources employee to Ruiz that contained a list of positions that were "true vacancies" on July 7,

---

[12] As noted above, Nozawa made additional claims, but she addresses only these three claims in her appeal.

[13] The DOC also argued that Nozawa failed to establish a question of fact as to whether she could perform the essential functions of her job.

[14] An Administrative Assistant 4 position, a "Secretary Supervisor" position, and an Office Assistant Senior position.  CP at 307.

2011.[15]  CP at 552.  But Nozawa did not provide any evidence or documentation establishing the qualifications for these jobs or whether she qualified for these jobs.

Regarding her disparate treatment claim, she again argued that there were questions of fact as to whether there was an adverse employment action, specifically whether the DOC offered her all of the positions available.  She also argued that there were questions of fact as to whether other individuals were treated more favorably than she was[16] and whether working around inmates was an essential function of her CIPC position.

Finally, regarding the retaliation claim, she appeared to argue that there were questions of fact as to each element.  She specifically asserted that the adverse employment actions related to this claim included (1) the April 19, 2011 meeting with Superintendent Cole, (2) the withdrawal of permission for her to work in the administration building in March 2011, (3) refusing to accommodate her attempts to return to work, and (4) offering her only temporary positions that would reduce her pay.

## B.  SUMMARY JUDGMENT MOTION HEARING AND RULING

At the summary judgment motion hearing, Nozawa's counsel disputed the DOC's claim that Nozawa had conceded the statute of limitations issues.  Despite not having responded to the statute of limitations issue in his written response to the summary judgment motion, Nozawa's

---

[15] Two Fiscal Technician 2 positions, a Correctional Records Technician 1 position, an Administrative Assistant 3 position, and an Office Assistant Lead position.

[16] To support this assertion, Nozawa claimed that another DOC employee, Tammy White, had been "accommodated outside the major part of the institution."  CP at 438.  But White's "light duty" was required under the Industrial Insurance Act, Title 51 RCW, for a work-related injury, not for a reasonable accommodation for a temporary nonwork-related injury.  CP at 617.

counsel argued that the statute of limitations did not apply to Nozawa's claims because of the "continuing violations doctrine." Report of Proceedings (RP) at 33-34.

The DOC responded that the continuing violation doctrine applied only to hostile work environment claims. It also argued that a reasonable accommodation decision made over and over again does not give rise to a continuing violation for purposes of the statute of limitations.

The trial court responded,

> As you heard from the court's earlier question, I understand the defense motion to dismiss based upon statute of limitations is an argument that there should be no cause of action for conduct prior to May 4th, 2011. The Plaintiff did not dispute, in its response brief or today, that there is a different statute of limitations, but verbally argued that this is a situation with a continuation doctrine that there was an entire basically year of actions by the defendant, some before May of 2011, some after May of 2011, which gives rise to the various causes of action.
>
> I am not persuaded by that argument, and I am disappointed that if somebody is going to resist an argument, that they don't put briefing or case law in their responsive brief. *So to the extent that there are causes of action based upon alleged by the defendant that predate May 4, 2011, I will find that those causes of action are appropriately dismissed based upon a failure to meet the statute of limitations.*

RP at 44-45 (emphasis added).

The trial court further found that Nozawa had failed to establish issues of material fact supporting her remaining claims. The trial court granted the DOC's summary judgment motion and dismissed all of Nozawa's claims with prejudice. Nozawa appeals.

## ANALYSIS

Nozawa argues that the trial court erred when it granted summary judgment on her failure to accommodate, disparate treatment based on disability, and retaliation claims. We hold that the trial court did not err when it found that Nozawa's claims based on DOC actions occurring on or before April 28, 2011 were barred by the statute of limitations. As to her remaining claims, we

11

further hold that summary judgment was proper because Nozawa failed to establish questions of material fact regarding whether (1) the DOC provided a reasonable accommodation for her nonwork-related injury and (2) there was an adverse employment action to support her disparate treatment and retaliation claims.

## I. SUMMARY JUDGMENT STANDARDS; BURDEN SHIFTING STRUCTURE

We review an order granting summary judgment de novo. *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 302, 178 P.3d 995 (2008). Under CR 56(c), summary judgment is appropriate if the record presents no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). We must view all facts and draw reasonable inferences from them in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26. But the nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

The WLAD prohibits employers from discriminating based on sensory, mental, or physical disability or from retaliating against a whistleblower. RCW 49.60.030(1), .210(2). We analyze WLAD discrimination and retaliation allegations under the three-step *McDonnell Douglas Corp. v. Green* burden-shifting analysis when there is no direct evidence of discrimination or retaliation. 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006)). Under this analysis, the employee has the initial burden of establishing that there are questions of fact as to each element of a prima facie case. *Hill*, 144

Wn.2d at 181. Although summary judgment is frequently inappropriate in discrimination and retaliation cases because the WLAD is to be liberally construed and the evidence will often result in competing inferences that a jury must resolve, if the employee fails to meet this burden, summary judgment is appropriate. *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 777, 249 P.3d 1044 (2011).

## II. STATUTE OF LIMITATIONS

Nozawa challenges the trial court's dismissal of some her claims under the statute of limitations.[17] The DOC argues that we should affirm this part of the trial court's ruling because Nozawa (1) failed to address the DOC's statute of limitations argument in the trial court, (2) fails to address the statute of limitations ruling in her appellate brief, and (3) fails to show that her claims fall under the continuing violations doctrine.

Although we hold that Nozawa did not waive any challenge to the trial court's statute of limitations ruling, we agree with the DOC that the continuing violation doctrine does not apply here.

### A. NO FAILURE TO PRESERVE OR FAILURE TO ASSIGN ERROR

The DOC argues that we should affirm the trial court's ruling on the statute of limitations issue because Nozawa did not address the DOC's statute of limitations argument in the trial court. DOC is correct that Nozawa did not address the DOC's statute of limitations argument in her written response to the DOC's summary judgment motion. But Nozawa presented argument on

---

[17] We address this issue first because it defines what claims are properly before us.

this issue during the summary judgment hearing. Thus, Nozawa has not waived this issue by failing to raise it in the trial court.

The DOC further argues that we should not reach the statute of limitations issue because Nozawa failed to assign error or present argument related to the statute of limitations issue on appeal. Nozawa did not discuss the statute of limitations issue in her assignments of error. But she clearly addresses the statute of limitations in her argument relating to the continuing violation doctrine.

Nozawa's failure to articulate the statute of limitations issue in her assignments of error would allow us to refuse to address this issue. *See* RAP 10.3(a)(6). But we may consider an appellant's arguments despite the lack of an assignment of error when the briefing makes the nature of the challenge clear, the violation of the rules is minor, there is minimal inconvenience to this court, and there is no prejudice to the opposing party. *Sudar v. Dep't of Fish & Wildlife Comm'n*, 187 Wn. App. 22, 30 n.4, 347 P.3d 1090 (2015); *see also* RAP 1.2(a).[18] Here, Nozawa's violation of the rules is minor, her argument is sufficiently briefed and easily identified within the brief, the record is adequate for us to fairly decide the issue, and her failure to assign error is a minimal inconvenience to this court. Furthermore, there appears to be no prejudice to the DOC—in fact, the DOC acknowledges Nozawa's argument and briefly addresses the merits of this argument in a footnote. Accordingly, we exercise our discretion to consider this issue.

---

[18] RAP 1.2(a) provides,

> [The Rules of Appellate Procedure] will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

## B. APPLICABILITY OF CONTINUING VIOLATIONS DOCTRINE

Nozawa argues that because the continuing violation doctrine applies, the trial court erred in limiting her claims based on the statute of limitations.[19] The DOC argues that the continuing violations doctrine is only applicable to hostile work environment claims. We agree with the DOC that the statute of limitations bars Nozawa's failure to accommodate, disparate treatment based on disability, and retaliation claims to the extent they are based on discrete acts occurring outside the statute of limitations period.

For discrete discriminatory or retaliatory acts, the limitation period starts to run from the date of the alleged wrongful act. *See Antonius v. King County*, 153 Wn.2d 256, 264, 103 P.3d 729 (2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-13, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)); *Albright v. State*, 65 Wn. App. 763, 767-68, 829 P.2d 1114 (1992).

Here, the discriminatory acts Nozawa alleges include (1) the April 19, 2011 meeting with Cole, (2) the March 14, 2011 refusal to allow her to continue to work from the administrative office, and (3) the DOC's alleged failure to provide her with the chance to consider all potential job opportunities, which occurred at the earliest in July 2011. Each of these acts are discrete acts. Thus, the trial court did not err when it limited Nozawa's claims to the discrete acts that occurred during the three-year statute of limitations period (after April 28, 2011).

---

[19] She also contends that we can consider all prestatute of limitations acts as evidence when considering her surviving claims. Nozawa is correct. Even if a claim cannot be based on an act that occurred before the statute of limitations period, such acts, if otherwise admissible, can still be considered relevant evidence when addressing other, discrete actions that fall within the statute of limitations. *See Broyles v. Thurston County*, 147 Wn. App. 409, 434, 195 P.3d 985 (2008). Because we review the trial court's summary judgment ruling de novo, we will consider the prestatute of limitations acts to the extent they are relevant and admissible evidence supporting Nozawa's remaining claims.

C. APPLICATION OF STATUTE OF LIMITATIONS

We now turn to whether any of Nozawa's claims were based on acts that occurred before the three-year statute of limitations. WLAD claims must be brought within three years under the general statute of limitations for personal injury actions. *Antonius*, 153 Wn.2d at 261-62; RCW 4.16.080(2). Nozawa filed her original complaint on June 27, 2014.[20] The requirement to file a tort claim before filing a complaint against a state agency tolls, and therefore extends, the three-year statute of limitations by 60 days. Former RCW 4.92.110 (2009); *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 225-26, 86 P.2d 1166 (2004). Thus, the trial court properly dismissed any claims based on acts that occurred before April 28, 2011.

Nozawa's retaliation claim was based in part on the April 19, 2011 meeting with Superintendent Cole. This meeting falls outside the statute of limitations and therefore cannot be the basis of any of Nozawa's retaliation claims.

Nozawa's failure to accommodate and disparate treatment claims, and possibly part of her retaliation claim, were based in part on the DOC's refusal to allow her to work in the administrative building. The denial of her request to work in the administration building occurred on or around March 14, 2011, which falls outside the statute of limitations. Accordingly, the portions of Nozawa's claims based on the decision to not allow her to work from the administration building fall outside the statute of limitations and cannot be the basis of any of her claims.

---

[20] The DOC asserted in the trial court that the statute of limitations date was May 4, 2011. But as the DOC acknowledges, that date was based on the filing of Nozawa's amended pleadings on July 3, 2014, not her original complaint. We refer to the earlier date based on the filing of her original complaint on June 27, 2014.

Finally, Nozawa's failure to accommodate and disparate treatment claims, and possibly part of her retaliation claim, were also based in part on the DOC's alleged failure to offer her all potential positions as an accommodation. The acts related to these claims appear to have occurred in and after July 2011, which is within the statute of limitations. Accordingly, these claims are not barred by the statute of limitations to the extent they are based on the DOC's alleged failure to offer all potential positions as an accommodation.

### III. FAILURE TO ACCOMMODATE CLAIM

Nozawa next argues that the trial court erred in dismissing her failure to accommodate claim because she has shown that there are issues of material fact as to each element of this claim. We disagree because she fails to establish questions of fact as to each element of a prima facie case of failure to accommodate.

To establish a prima facie case of failure to accommodate, the employee must show that he or she (1) "'had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job,'" (2) "'was qualified to perform the essential functions of the job in question,'" (3) "'gave the employer notice of the abnormality and its accompanying substantial limitations,'" and (4) after notice was given, "'the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.'" *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004) (quoting *Hill*, 144 Wn.2d at 192-93). To withstand summary judgment, Nozawa must establish specific and material facts to support each of these elements. *Fulton v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 147,

279 P.3d 500 (2012). Nozawa fails to establish a question of fact as to the fourth element,[21] whether the employer failed to affirmatively adopt measures that were necessary to accommodate her.

An employee is not entitled to the accommodation of her choice. *Doe v. Boeing Co.*, 121 Wn.2d 8, 20, 846 P.2d 531 (1993); *Havlina v. Dep't of Transp.*, 142 Wn. App. 510, 517, 178 P.3d 354 (2007). The employer meets it obligation when it offers an accommodation that is reasonable. *Griffith v. Boise Cascade, Inc.*, 111 Wn. App. 436, 442, 45 P.3d 589 (2002). When the accommodation offered is allowing the employee to continue working in another position, reasonable accommodation means

> "1) to determine the extent of [the employee's] disability and how it could be accommodated, 2) to take affirmative steps to inform [the employee] of job opportunities within the Company, and 3) to consider [the employee] for and move him [or her] into opening for which he [or she] was qualified."

*Griffith*, 111 Wn. App. at 443 (alterations in original) (quoting *Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1050-51 (9th Cir. 1995)).

Here, the DOC allowed Nozawa to use accrued leave and provided shared leave while attempting to assist her in finding a temporary position. The DOC also took affirmative steps to inform Nozawa of job openings she was qualified to fill and appeared willing to move her into various positions for which she was qualified. But Nozawa asserts that this was not sufficient to establish a reasonable accommodation because the DOC did not inform her of every potential job

---

[21] Because Nozawa was required to establish questions of material fact as to each element of her prima facie case, we do not address the remaining elements.

opportunity and offered her only positions that paid less than her CIPC position.[22] Nozawa

contends that she presented evidence that there were at least five vacant positions available in July

2011 and that the DOC "offer[s] no reason" why only an Office Assistant 3 position was offered.

Br. of Appellant at 18. Nozawa presented some evidence that there may have been other potential

openings. But Nozawa failed to present evidence sufficient to create a question of material fact as

to whether the DOC failed to take steps to offer her job opportunities within the DOC because she

did not present any evidence, beyond her mere conjecture, that she was qualified for these positions

and that she would be able to perform the essential functions of these positions.

Thus, Nozawa fails to show that there was a material question of fact as to whether the

DOC failed to reasonably accommodate her. Accordingly, she failed to meet her burden of

establishing a question of material fact as to each element of her prima facie case of failure to

accommodate, and summary judgment was appropriate.

IV. DISABILITY DISPARATE TREATMENT AND RETALIATION

Nozawa further argues that summary judgment on her disparate treatment claim based on

her disability and her retaliation claim was improper because there were questions of fact as to

each element of her prima facie cases. Again we disagree.

---

[22] Nozawa also argues that the DOC failed to reasonably accommodate her when it refused to allow her to work in the administrative building in April 2011. But as discussed above, this claim is barred by the statute of limitations.

To establish a prima facie case of either disparate treatment or retaliation, Nozawa had to show that there was a question of material fact as to whether she was subject to an adverse employment action. *See Marin v. King County*, 194 Wn. App. 795, 808, 378 P.3d 203, *review denied*, 186 Wn.2d 1028 (2016); *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005); *Kirby v. City of Tacoma*, 124 Wn. App. 454, 468, 98 P.3d 827 (2004). Again, Nozawa asserts that the adverse employment action supporting these claims stemmed from the DOC's failure to allow her to consider all positions that were available and offered her only those positions with significantly less pay.

As discussed above, Nozawa failed to establish a question of material fact as to whether the DOC failed to offer her any position that she was qualified for and would be able to perform the essential functions of. Because Nozawa fails to establish a question of material fact regarding whether she was subject to an adverse employment action, she fails to establish each element of her prima facie cases of disparate treatment and retaliation, and summary judgment was appropriate.

No. 49091-9-II

Because the trial court did not err when it limited Nozawa's claims under the statute of limitations and Nozawa failed to establish questions of fact as to each element of her prima facie failure to accommodate, disparate treatment, and retaliation claims, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.

21